[Crim. No. 6158. Second Dist., Div. Three. Oct. 20, 1958.]

THE PEOPLE, Respondent, v. RICHARD PAUL GALLAGHER et al., Appellants.

Richard Paul Gallagher and Leonard Haas, in pro. per., Gladys Towles Root, under appointment by the District Court of Appeal, and Eugene V. McPherson for Appellants.

Edmund G. Brown, Attorney General, and Carl Boronkay, Deputy Attorney General, for Respondent.

SHINN, P. J.—By amended information, Leonard John Haas and Richard Paul Gallagher were charged with kidnaping Irmgard Davis for the purpose of robbery. (Pen. Code,

§ 209.) It was also alleged that they inflicted bodily harm on Mrs. Davis. In a jury trial, defendants were found guilty of kidnaping (Pen. Code, § 207) and they were sentenced to state prison. Haas appeals from the judgment and the denial of his motion for new trial. Gallagher appeals from the judgment.

The convictions were based upon evidence of the following facts. Mr. and Mrs. George L. Davis spent the evening of June 6, 1957, celebrating their fourth wedding anniversary at a restaurant on Olvera Street in Los Angeles. They left the restaurant shortly before 2 o'clock in the morning and drove toward their home in Long Beach in the family car, which was a cream-colored 1956 Cadillac. Mr. Davis testified that as they proceeded south on Alameda Boulevard, his wife asked him to stop the car so that she could relieve herself. After considerable discussion, Davis stopped in a dark and lonely spot about a block north of a crossing known as Dominguez Junction and Mrs. Davis alighted, taking her purse with her. Davis then drove to the crossing, made a U-turn and drove back to the place where he had left his wife. She was nowhere in sight. After searching the area for half an hour, Davis went home. Between 9 and 10 a. m., his wife was brought home from the hospital in a nervous and distraught condition. Davis stated that at the time she left the car she had about $200 in a billfold inside her purse and she was wearing three rings, including an expensive diamond cocktail ring. When she returned from the hospital she had neither the money nor the cocktail ring.

Mrs. Davis testified that after getting out of the car she walked a few feet off the road and relieved herself. She became frightened and angry when her husband drove away. Mr. Davis had had a few drinks and had been quarreling with her. She noticed a light coming from a building on the other side of Alameda Boulevard and proceeded to cross the street. A car passed her, going north, then stopped and backed up to where she was standing. Defendant Haas got out of the car, seized her arms and shoved her inside.

As the car started up in a northerly direction, Mrs. Davis was placed in the front seat between Haas and defendant Gallagher, who was driving. Haas told Gallagher to drive through unlighted streets and to stay in the dark. Gallagher stopped the car in an alley and the two men forced Mrs. Davis into the back seat. At this time, she no longer had her purse. Haas got into the back seat and started to remove

her clothes. He pinned her arms behind her back and had sexual intercourse with her against her will and over her resistance. Gallagher then changed places with Haas and had intercourse with Mrs. Davis while Haas drove the car. When Haas stopped the car in order to change places with Gallagher, Mrs. Davis screamed and attempted to escape. Haas struck her on the head with his fists, scratched her nose and slammed the door on her foot, which was partially outside the car. She lost her shoes during the struggle. Gallagher then told her: "You better not try any more like this again, we'll let you have it. We have a gun." Mrs. Davis asked for her purse and Gallagher said that she did not have a purse. Haas had intercourse with her a second time as Gallagher drove the car. While Haas was pressing her onto the back seat, she removed her cocktail ring and tried to hide it in her brassiere but Haas took the ring. (On cross-examination, she admitted stating at the preliminary hearing that Gallagher had taken her ring.) Shortly afterward, Mrs. Davis asked for a cigarette and Gallagher drove to an all night market where he purchased several packs of cigarettes. When he returned to the car, Haas said: "You better step on it, I see the cops over there." At that moment, Mrs. Davis jumped out of the car and screamed for help.

Mrs. Davis further testified that when the police officers arrived, her dress was dirty and disarranged, although it had not been torn, and her panties and shoes were missing. She had bruises on her arms, shoulders, chest and face and scratches on her feet, face and knees. The officers retrieved her purse from the car and handed it to her, but the money was gone. Upon being shown a $50 bill by the deputy district attorney, Mrs. Davis identified it as one of the bills she had had in her purse; the number "24" was written on it in pencil. The cocktail ring was never recovered.

Delano Manos, a Los Angeles County Sheriff's deputy, was one of the officers who came to the assistance of Mrs. Davis. At 4:15 a. m. on June 7th, Manos and his partner, Deputy Kirkpatrick, were patrolling the Bell Gardens area. Manos testified that as they drove past an all-night market they observed a black 1949 Pontiac in an adjacent parking lot. There were three persons in the car, a woman and two men. The Pontiac started up and left the lot. As it entered the street, Mrs. Davis jumped out of the car and screamed "Help, police." When the officers ran over, she said: "They have a gun." Upon being asked by Deputy Manos what had hap-

pened, Mrs. Davis replied: ''They took my money.'' At this time she was in a hysterical condition; her clothes were unbuttoned and disarranged. The officers took defendants into custody and searched the Pontiac. They found Mrs. Davis' purse and panties on the front floorboard on the passenger side of the car but they did not find the cocktail ring; there was no money in the purse. Defendants were searched and $63 was found on the person of Haas and $145, including a $50 bill, was found on the person of Gallagher; the money was received in evidence. The officers ordered another police car to take Mrs. Davis to the hospital.

Defendants were taken to the sheriff's station where they were questioned by Officers Manos and Kirkpatrick. When asked where they obtained the money found on their persons, defendants replied that it was part of their accumulated wages from a merchant seaman's trip. Upon being asked by Kirkpatrick whether he had raped Mrs. Davis, Haas said that he had tried to do so, but was deterred by her struggling and crying. Gallagher denied having sexual relations with Mrs. Davis. He told Officer Manos that Mrs. Davis had flagged down the Pontiac and entered it willingly.

Dr. Albert H. Lerner was on duty in the emergency room of the Maywood Hospital on the morning of June 7th. At approximately 5 a. m., he made a pelvic examination of Mrs. Davis and took a vaginal smear which disclosed organisms resembling male spermatazoa. Lerner testified that he did not notice any bruises on her face, although he saw some blemishes which might have been bruises. Mrs. Davis appeared nervous and anxious and he administered some demerol to calm her nerves. A few hours later, Mrs. Davis was examined by her family physician, a Dr. Rabin. Rabin testified that he found scratches on her nose, elbow and shoulders and bruises on her back, shoulders, legs and arms; one of her toes was severely bruised. Mrs. Davis was crying and in a state of extreme anxiety.

Defendants took the stand and denied their guilt. Gallagher testified that he had $160 on his person on the night of June 6th; the money consisted of $20 from his savings account and $140 which he had saved from weekly disability checks; he had been injured on his job and was not working on June 6th. Haas testified he had about $75 which he had saved from his salary; his employment terminated in late May.

Defendants testified they took Mrs. Davis into the car but denied the use of force and denied striking her or taking her

rings or money from her purse. Gallagher stated that he did not have intercourse with Mrs. Davis. Haas testified that he had intercourse with Mrs. Davis on the back seat of the car with her consent and that they were planning to go to his (Haas') residence to spend the night. Both defendants corroborated the other witnesses as to the circumstances of their arrest.

The first contention to be discussed is that defendants were improperly convicted of kidnaping for the reason that kidnaping is not an offense necessarily included within the crime of kidnaping for the purpose of robbery. We cannot agree.

Penal Code, section 209, as amended in 1951, provides in material part: ". . . any person who kidnaps or carries away any individual to commit robbery, or any person who aids or abets any such act, is guilty of a felony. . . ." Section 207 provides: "Every person who forcibly steals, takes, or arrests any person in this state, and carries him into another country, state, or county, or into another part of the same county, . . . is guilty of kidnaping."

The jury is authorized by Penal Code, section 1159, to find an accused guilty of any offense, the commission of which is necessarily included in that with which he is charged. If, in committing acts denounced by one statute, the accused must necessarily violate another, the latter offense is necessarily included within the former. (*People* v. *Chester,* 138 Cal.App.2d 829, 831 [292 P.2d 573].) Furthermore, we must look to the language of the accusatory pleading rather than to the language of the statute defining the offense charged in determining what offenses are included within the charge. (*People* v. *Marshall,* 48 Cal.2d 394 [309 P.2d 456].)

 The amended information alleged that Haas and Gallagher "did willfully, unlawfully and feloniously kidnap and carry away Irmgard Davis, an individual, with intent and for the purpose of committing robbery." A sufficient answer to defendants' argument is that they could not commit the act of kidnaping and carrying away Mrs. Davis for the purpose of robbery without necessarily committing the act of kidnaping.

A second contention is that the court committed prejudicial error in amplifying one of its instructions to the jury.

 At the People's request, the court gave the following instruction: "Every person who unlawfully and forcibly

steals, takes, or arrests any other person in this state, and carries him into another country, state or county, or into another part of the same county, doing so against the will or without the consent of the person so carried, is guilty of kidnaping.''

On the second morning of their deliberations, the jurors returned to the courtroom to ''have a broader interpretation on the paragraph on kidnaping.'' Whereupon the court stated: ''Well, I think the definition as given is as simple as can be given, except I might say this, that the taking of my [sic] person into a vehicle against their will, transporting for any distance, would be simple kidnapping; *even going further than that, the law is that if I get into a vehicle voluntarily and then they refuse to let me out and we go further, I mean transport me further, that becomes simple kidnapping, you see.''* (Emphasis added.)

Defendants assign error to the italicized portion of the foregoing statement. In this connection, they argue that the offense of kidnaping consists of the forcible seizure and asportation of another person; that a mere unlawful detention, with or without the use of force, constitutes the offense of false imprisonment; and that the statement of the court told the jury in effect that it might convict defendants of kidnaping Mrs. Davis upon proof of facts amounting to no more than false imprisonment. The argument cannot be maintained. The challenged remarks correctly stated the law. ■ It is settled that where the victim has at first willingly accompanied the accused, the latter may nevertheless be guilty of kidnaping if he subsequently restrains his victim's liberty by force and compels the victim to accompany him further. (*People* v. *Trawick,* 78 Cal.App.2d 604, 606 [178 P.2d 45], and cases cited.)

The final contention to be considered is the insufficiency of the evidence to sustain the convictions. Defendants assert that the testimony of Mrs. Davis was inherently improbable. Their arguments are not persuasive. The contention is obviously untenable. The testimony of Mrs. Davis has already been related and it is unnecessary to restate it. ■ The weight to be accorded to her testimony and the resolution of any inconsistencies were questions for the trier of fact, not for a reviewing court. (*People* v. *Thomas,* 103 Cal.App.2d 669, 672 [229 P.2d 836]; *People* v. *Dragoo,* 121 Cal.App.2d 322, 324 [263 P.2d 90].) ■ Mrs. Davis' account of her ordeal, together with the testimony of her family physician and of

the arresting officers, was amply sufficient to establish defendants' guilt of kidnaping.

As to Haas, the judgment and order appealed from are affirmed; as to Gallagher, the judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 17, 1958.