[Crim. No. 3634. First Dist., Div. Two. Oct. 18, 1960.]

THE PEOPLE, Respondent, v. PIERRE DE GEORGIO, Appellant.

Donald B. King, under appointment by the District Court of Appeal, and King & Sullivan for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Peter T. Kennedy, Deputy Attorneys General, for Respondent.

KAUFMAN, P. J.—This is an appeal from a judgment of conviction entered on a jury verdict finding the appellant, Pierre De Georgio, guilty of kidnapping and armed robbery, and from the order denying the motion for a new trial. It is argued that the judgment must be reversed because: (1) The court erroneously admitted evidence of other offenses and deprived the appellant of his privilege against self-incrimination, and (2) the court allowed the indictment to

be changed after all of the evidence had been presented, and (3) the evidence does not sustain the judgment as to Count I, Count III and Count IV, and (4) the court refused appellant's proffered instructions on extortion, and (5) prejudicial remarks of the counsel for the codefendant.

About 11:30 a. m. on July 30, 1958, Mrs. Margaret Taylor was a patient at the office of her dentist, Dr. Albert Selleck, on the twenty-first floor of 450 Sutter Street in San Francisco. Suddenly, Mrs. Taylor and the doctor heard a scream coming from the reception room. The door burst open and the appellant entered with a drawn gun, while Mrs. Blake, the doctor's assistant, was dragged in on the floor by Fred Eglip, the codefendant, who had a knife. The doctor was tied into the dental chair, while Mrs. Taylor was bound and gagged on the floor; Mrs. Blake was also tied into a chair. The appellant threatened the doctor and told him they had already kidnapped Mrs. Selleck and would cut her up if their demands for money were not met. The doctor gave them $340 out of his wallet and about $800 from the safe which was opened by Mrs. Blake.

As the two men continued to harass the doctor and demand $4,000, Mrs. Taylor said:

"I have $1,500 in my checking account, and I'll write a check for that amount if you will let the doctor alone and let us go and not harm us, and let Mrs. Selleck alone, and let her go."

Mrs. Taylor was untied and the doctor was ordered to write a check for $800 payable to Mrs. Taylor and to be cashed by her when she got the money from her checking account. Mrs. Taylor was ordered to go to the bank with the appellant while Eglip remained to guard the doctor and Mrs. Blake, with instructions to kill both of them if the appellant did not return in half an hour. Just before Mrs. Taylor and the appellant left, the two robbers took about $35 from Mrs. Taylor's purse and $20 from Mrs. Blake.

The defendant put his gun in his belt and left with Mrs. Taylor. On the way to the elevator, he said to her: "Don't make any fuss in the elevator; don't attract attention, don't say anything." He also warned her that two friends of his were downstairs and would be watching and following them in a green Chrysler during the entire transaction. Mrs. Taylor, however, did not at any time see anyone following them. They took a cab to the main branch of American Trust at 364 California Street. As they started toward the

entrance to the bank, the appellant told Mrs. Taylor he would kill her if she tried to trick him and instructed her to get the money in $100 bills. At the bank, Mrs. Taylor cashed Dr. Selleck's $800 check and cashed one of her own for $1,500. After they left the bank, Mrs. Taylor suggested that they go to the El Prado in the Plaza Hotel to make the telephone call to Dr. Selleck's office. Mrs. Taylor had a luncheon engagement at the El Prado with her husband and hoped to be rescued. En route in a taxicab, defendant demanded and received twenty-three $100 bills from Mrs. Taylor.

At the El Prado, the appellant, suspecting that someone had recognized Mrs. Taylor pushed her into another cab which proceeded to the area of Van Ness Avenue and Sacramento Street. There, they entered a cigar store and appellant telephoned Eglip at Dr. Selleck's office and found he had already left. They got into another taxi and proceeded to Ellis and Leavenworth Streets, where Mrs. Taylor was released.

At the trial, the appellant admitted the events of July 30 substantially as described by Mrs. Taylor, Mrs. Blake and Dr. Selleck but stated that he had been coerced by Fred Eglip, Jim Boan, and Frank Cumulado. He stated that taking Mrs. Taylor to the bank was Eglip's idea but admitted he had dressed up in advance in order to be presentable at the bank. He admitted having a gun and threatening Mrs. Taylor in the elevator and at the bank, but stated that the gun was not loaded and belonged to Eglip. Eglip testified that the appellant was the originator of the plan to go to the bank with Mrs. Taylor, and that the gun belonged to the defendant who regularly carried it. Frank Cumulado testified that the appellant had planned the crime. James Boan testified that he did not participate in the crime and denied threatening the appellant or following the appellant and Mrs. Taylor in a car.

The main argument on appeal is that the trial court erroneously admitted evidence of other offenses and erroneously deprived the appellant of his privilege against self-incrimination by ordering him to answer a question about his prior conviction on cross-examination. Before the appellant took the stand, three witnesses testified that he had been armed at the time of the incident in question; on direct examination, the appellant admitted having the gun in his possession at that time and on several other occasions. On cross-examination, the appellant then denied having a gun

with him when he went to the bank with Mrs. Taylor. The district attorney then asked: "All right. Directing your attention to that same night, July 28th, weren't you in company with Mr. Eglip and Mr. Boan in this cigar store on Market Street?" The court then stated that since appellant's defense was lack of intent, the above question was within the scope of proper cross-examination, particularly since the same individuals were involved. Appellant's counsel objected on the grounds of the Fifth Amendment to the U. S. Constitution and section 13 of article I of the California State Constitution. The objection was overruled and appellant instructed to answer on penalty of contempt. The appellant denied being in the cigar store. Later in the trial, an independent witness identified the appellant as one of the people who had robbed his cigar store of $750 on July 28.

The general rule is that evidence of a collateral crime is inadmissible in a criminal prosecution for the asserted reason that its tendency to inflame and prejudice the jury outweighs its evidentiary value. (*People* v. *Albertson*, 23 Cal.2d 550 [145 P.2d 7].) An exception to the general rule is found, however, where the evidence of the prior or collateral criminal act is relevant to prove a specific and ascertainable feature of the crime on which the prosecution is founded such as motive or intent, where the connection of the accused with the collateral offense is clear and convincing. (*People* v. *Wade*, 53 Cal.2d 322, 330 [1 Cal.Rptr. 683, 348 P.2d 116].) In the instant case, because of the testimony of the independent witness and the fact that Eglip and Cumulado were also involved, there is a sufficient link which connects the appellant with the robbery of the store. This is relevant to the commission of the robbery and kidnapping in the instant case as it bears on the appellant's defense of lack of intent. There was no error in the admission of this testimony. (*People* v. *Freytas*, 157 Cal.App.2d 706 [321 P.2d 782] ; *People* v. *Bonilla*, 124 Cal.App. 212 [12 P.2d 64].)

We turn now to the question presented by the contention that the trial court erroneously deprived the appellant of his privilege against self-incrimination. After the admission of the evidence discussed above, the district attorney then asked the appellant if he had ever been convicted of a felony. Appellant's counsel then instructed him not to answer on the ground that he might incriminate himself of the crime of violating section 12021 of the Penal Code, which provides:

"Any person who is not a citizen of the United States and any person who has been convicted of a felony under the laws of the United States, of the State of California, or any other state, government, or county, or who is addicted to the use of any narcotic drug, who owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person is guilty of a public offense, and shall be punishable by imprisonment in the state prison not exceeding five years, or in a county jail not exceeding one year or by a fine not exceeding five hundred dollars ($500), or by both." [Added by Stats. 1953, ch. 36, § 1.]

Appellant's counsel requested immunity which was refused. The court then instructed the appellant to answer the question under penalty of contempt. The appellant then admitted a prior conviction for murder in Chile in 1950.

Appellant's argument is that when he was ordered to answer the question about his prior conviction, the fact of his prior conviction when taken with the previously established fact that he was armed on several occasions, would make out a circumstantial case of guilt under section 12021.

[■■] It is well established in this state that when a defendant takes the stand, he may be impeached by prior felony convictions. When a defendant takes the stand, he becomes subject to the same rules for testing his credibility as any other witness, including impeachments as provided in section 2051 of the Code of Civil Procedure. (*People* v. *Cobb*, 45 Cal.2d 158 [287 P.2d 752]; *People* v. *Romer*, 218 Cal. 449 [23 P.2d 749]; *People* v. *Hickman*, 113 Cal. 80 [45 P. 175].)

Section 2051 of the Code of Civil Procedure provides: "A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, *except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony unless he has previously received a full* and unconditional pardon, based upon a certificate of rehabilitation." [Emphasis supplied.]

[■■] Under this section, the prosecution has a limited right to cross-examine on prior convictions. (*People* v. *Linyard*, 151 Cal.App.2d 50, 55 [311 P.2d 57].)

Appellant concedes the above stated rule, but contends that because of the peculiar circumstances of the case, preju-

dicial error was committed in permitting the district attorney to go so far beyond matters raised on his examination in chief (Pen. Code, § 1323) that the appellant was forced to incriminate himself of a separate and distinct offense (Pen. Code, § 12021) with which he was not charged.

Section 1323 of the Penal Code provides so far as relevant: "A defendant in a criminal action or proceeding cannot be compelled to be a witness against himself; but if he offers himself as a witness, he may be cross-examined by the counsel for the people as to all matters about which he was examined in chief. . . ."

Respondent, however, argues that by taking the stand in his own behalf, the appellant waived the right to urge the protection afforded by the Constitution as to all inquiries proper on cross-examination.

As was held in *People* v. *Romer*, 218 Cal. 449, at page 452 [23 P.2d 749]:

"Under section 2051 of the Code of Civil Procedure, a witness may, by way of impeachment, be asked whether he has been convicted of a felony, and may also be asked the nature of the felony. . . . Defendants having voluntarily taken the stand, they were obviously subject to impeachment in the same manner as any other witness, under this section. . . . It is defendants' theory that if, upon examination under section 2051 of the Code of Civil Procedure, they are compelled to answer as to the conviction of a felony, they are thereby forced to give evidence which may subject them to further criminal prosecution and punishment.

"We are unable to agree with defendants that the effect of these questions is to compel self-incriminating answers. It is elementary that a person once convicted can never be prosecuted again for the same offense. The statutory provisions for increased punishment to a subsequent offender do not provide for such second prosecution. There is a single prosecution for the new crime, the punishment being more severe because of the character of the offender. . . ."

In *People* v. *Linyard*, 151 Cal.App.2d 50 at page 54 [311 P.2d 57], it was held that where a defendant took the stand and testified on his own behalf, the prosecution may impeach by showing prior felony convictions, even where such priors are admitted on arraignment. When a defendant takes the stand he becomes subject to the same rules for testing his credibility as any other witness including impeachment as provided in section 2051 of the Code of Civil Procedure.

In *People* v. *Bigelow,* 104 Cal.App.2d 380 at page 387 [231 P.2d 881], it was held ". . . *The fact that an inquiry on cross-examination may bring to light criminal conduct of a witness does not render such cross-examination erroneous when it is relevant to the subject matter* of the direct examination. . . ." [Emphasis supplied.]

The privilege against self-incrimination may be waived and such waiver is generally considered as inherent in the defendant's voluntarily taking the witness stand.

"If a defendant does take the stand, his voluntary testimony is to be considered by the same standard and rules as testimony of other witnesses and must be weighed in the same manner. He may be cross-examined as to any matters about which he testified on direct examination; and he may be impeached as any other witness, particularly by proof of prior conviction of a felony, or by showing conduct or testimony inconsistent with his direct testimony." (14 Cal.Jur.2d, § 119, p. 341.)

It is our view that when a defendant who voluntarily takes the stand is impeached by showing that he has previously been convicted of a felony and this impeachment incidentally shows the commission of another crime, under section 12021 of the Penal Code, that is merely a risk the defendant himself has taken when he voluntarily takes the stand. The defendant becomes just another witness when he takes the stand and is subject to all basic rules of criminal law and is subject to impeachment as provided for by law.

The evidence in this case is clear and convincing as to the defendant's guilt and it would be a miscarriage of justice to reverse the case because of defendant's claimed error.

It is argued that the trial court erred in striking Dr. Selleck's name from Count I of the indictment after all the evidence had been presented. However, under section 1009 of the Penal Code, the court has the power to amend an indictment at any stage of the trial, even after the reception of the evidence, unless substantial rights of the defendant are prejudiced thereby. (*People* v. *Kynette,* 15 Cal.2d 731 [104 P.2d 794].) Here, the appellant was actually aided by the deletion of the name, and his assertion of double jeopardy is entirely without merit, and premature. (*People* v. *Hinshaw,* 194 Cal. 1 [227 P. 156].)

The next argument on appeal is that the court erred in denying the defendant's motion for advisory verdicts as to Count I (kidnapping of Margaret Taylor for the

purpose of a robbery) and Count III (robbery of Margaret Taylor), because the evidence indicated that Mrs. Taylor's actions were voluntary. It has been held that an order denying a motion for an advised verdict is improper if there is sufficient evidence to warrant the jury arriving at a verdict of guilty. (*People* v. *Smith,* 74 Cal.App. 510, 516 [241 P. 267]; *People* v. *Hewlett,* 108 Cal.App.2d 358 [239 P.2d 150].) The question is, therefore, whether there is sufficient evidence to sustain the verdict on Counts I and III.

The uncontroverted evidence indicates that Mrs. Taylor was first bound and gagged, and was then taken to the bank at gunpoint and repeatedly threatened by the defendant. It is argued, however, that Mrs. Taylor's consent to go to the bank with the defendant was motivated not by fear for her own safety but only by her fear for the other two. In the light of the above stated facts, the argument is entirely without merit. As to Count I which is for kidnapping, the gravamen of the offense is some form of compulsion. (*People* v. *Guerrero,* 22 Cal.2d 183 [137 P.2d 21].) The requisite force or compulsion need not consist of the use of actual physical force or express threats; the taking is forcible where it is accomplished through the giving of orders which the victim feels compelled to obey because he fears harm or injury from the accused, and his apprehension is not unreasonable under the circumstances. (*People* v. *Dagampat,* 167 Cal.App. 2d 492, 495 [334 P.2d 581]; *People* v. *Broyles,* 151 Cal.App. 2d 428 [311 P.2d 88].) Consent induced by fear is no consent at all. When a woman reasonably determines that she cannot resist without peril to her life or safety, no further resistance is demanded by law. (*People* v. *Hinton,* 166 Cal.App.2d 743, 749 [333 P.2d 822].) Here, the defendant admitted continuously threatening Mrs. Taylor. She testified that before entering the bank, he told her he would kill her if she didn't cooperate, and he pushed and prodded her along with his gun, which was hidden under his coat. The weight to be accorded to Mrs. Taylor's testimony was for the trier of fact and not for the reviewing court. (*People* v. *Gallagher,* 164 Cal.App.2d 414 [330 P.2d 464].)

It is not necessary that there be a moving or carrying away of the victim in order to constitute the crime of kidnapping. The act of seizing an individual or restraining him through fear is as much a violation of the law as if he were carried away and concealed. (*People* v. *Salter,* 59 Cal.App.2d 59, 67 [137 P.2d 840].) Thus, the defendant's repeated ex-

pressed intention to restrain Mrs. Taylor also constituted kidnapping. (*People* v. *Gallagher*, 164 Cal.App.2d 414 [330 P.2d 464].)

As to the robbery count, it is argued that the evidence is insufficient and that the court should have given instructions on extortion because Mrs. Taylor was not in fear of her own life and safety, but only that of Dr. Selleck and Mrs. Blake. However, Mrs. Taylor testified as to her own fear and her attempts to signal for help in the cigar store and later in the taxicab. (*People* v. *Gallagher, supra.*)

Section 212 of the Penal Code states that robbery may be either:

"One. The fear of an unlawful injury to the person or property of the person robbed, or of any relative of his or member of his family; or,

"Two. The fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery." [Enacted 1872. As amended Code Am. 1873-74, ch. 614, p. 427, § 18.]

Appellant further argues that when the jury requested clarification as to the element of fear necessary, they were incorrectly told that the fear of harm to others was sufficient. The record reveals the following:

"THE FOREMAN: Well, the word 'fear' came in there by itself, and I brought up the question when the testimony was brought up. There was fear in everybody from the start, but the fear of what would happen to an individual that was in the position Mrs. Taylor was in, what would happen to her, was that the fear that she had?

"THE COURT: First you should take into consideration the fact that the language is 'threat of force or fear of harm.'

"Now, I understand your concern is whether the language that is used pertains to the fear of harm by Mrs. Taylor in regard to injury to herself or whether it also might encompass a fear of harm or injury to Dr. Selleck or Mrs. Blake. Is that specifically what you wish?

"THE FOREMAN: That is correct.

"THE COURT: Well, it is my conception of the law that the latter statement that I made is true, that it is the fear of harm—or let's put it another way—it may be the fear that Mrs. Taylor has at the time she is transported or carried away not alone of harm to herself but of harm either to Dr. Selleck or Mrs. Blake. Now, do I make myself clear?

"THE FOREMAN: Yes, that makes it clear.

"THE COURT: Now, is there anything else that you wish?

"THE FOREMAN: There was a request from the jurors that the last two short paragraphs that you read be read again.

"THE COURT: That I just re-read again?

"THE FOREMAN: The last two short paragraphs.

"THE COURT: The last two paragraphs you wish me to re-read?

"THE FOREMAN: Yes.

"THE COURT: If, however, such person by threat of force or fear of harm is transported or carried away to commit robbery the offense of kidnapping for the purpose of robbery is committed. It is for the jury to determine in this case whether or not Mrs. Taylor accompanied the defendant De Georgio during the period of time that elapsed from the time she left Dr. Selleck's office until they parted company under any such threat or force or fear of harm, or whether or not she accompanied that defendant during such period of time of her own free will."

 We see no error in the above instruction which properly left to the jury the question of compulsion, and properly refused the appellant's instruction on extortion. An instruction apparently unrelated to the case before it will be no less confusing to the jury because a theory to connect it to the facts actually exists and later is discovered. (*People* v. *Wade,* 53 Cal.2d 322, 333 [1 Cal.Rptr. 683, 348 P.2d 116].)

 The next argument is that the evidence is insufficient to sustain the verdict as to Count IV, the robbery of Cynthia Blake. However, Mrs. Taylor, Mrs. Blake and Dr. Selleck all testified about this matter and it was for the jury to weigh their testimony and resolve any inconsistencies. Furthermore, appellant's admission that he got $20 from her is sufficient alone to sustain the verdict.

 The final argument is that the remark of counsel for his codefendant was erroneous and prejudicial. We find no prejudicial error here. The record indicates that after this counsel was instructed in chambers to refrain from characterizing the defendant as a killer, the following occurred during the defendant's cross-examination by this counsel:

"Q. And you don't think that part is true? A. I don't think it is really true because I never tell I kill anybody inside, and I have a .22, no bullets inside, I don't think I can kill anybody.

"Q. You mean you never killed anybody except the person you killed down in Chile?

"Mr. Postel: Oh, your Honor, I object to that.

"The Witness: They use that to try to—(unintelligible) me; now they try to hang me——

"The Court: (Interrupting) Just a minute. Just a minute.

"Mr. Bloom: He just admitted the homicide in Chile.

"Mr. Postel: Oh, just a minute. I move for a mistrial at this time.

"The Court: The motion for a mistrial is denied. But the remark of counsel, Mr. Bloom, will go out of the record.

"All right, Mr. Bloom, I suggest remarks of a prejudicial nature be not made.

"Mr. Bloom: Yes, your Honor, I apologize to the Court for the improper remark.

"Mr. Postel: I would request that the jury be instructed to disregard that, and be instructed as to the sole purpose for which that testimony was admitted, your Honor."

In view of the foregoing, the judgment and order denying the motion for new trial are hereby affirmed.

Draper, J., and Shoemaker, J., concurred.

A petition for a rehearing was denied November 17, 1960, and appellant's petition for a hearing by the Supreme Court was denied December 14, 1960.