[Crim. No. 7393. Second Dist., Div. Three. May 3, 1961.]

THE PEOPLE, Respondent, v. ROBERT MILES
HARRIS, JR., Appellant.

James S. Fitzpatrick for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Edmond B. Mamer, Deputy Attorney General, for Respondent.

FORD, J.—The appellant Harris and his codefendant Holt were charged with the crime of burglary. It was alleged in the information that the defendants entered the theatre and building occupied by Al Sachs and Fox Theatre "with the intent then and there and therein unlawfully and feloniously to commit theft." At the trial, the appellant and his codefendant each waived his right to trial by jury and it was stipulated that the People's case could be submitted on the transcript of the preliminary hearing but that any party could call additional witnesses. Upon the submission of the matter, the court found each defendant guilty "of trespassing, a lesser included offense." The appeal of Harris is from the judgment. The sole question presented is whether the offense of which the appellant was found to be guilty is one included in the crime of burglary.

The evidence will be summarized, all of it except the testimony of the two defendants being that given at the preliminary examination. Albert Sachs, the manager of the theatre, testified that on March 15, 1960, he closed the theatre about 1:15 a. m. after inspecting the premises and finding no one there. After his first inspection, he saw the appellant come out of the auditorium and so he made another inspection prior to closing the premises. About a half hour after he saw Harris leave the building, he observed Harris walking across the parking lot. Harris then went to a liquor store and used the pay telephone. The next day the witness saw marks on the candy cabinet but could not say that they were fresh marks. He saw no marks around the doors but the bar which secured the ice cream cabinet seemed much looser than it usually did. Nothing was missing from the theatre. On the night when he saw the appellant Harris, he saw both defendants but he only observed the appellant leave the building. While he did not see them purchase admission tickets, they would not have been able to enter the theatre if they had not bought tickets. He remembered them because Holt came to him in his office to inquire about employment for a young lady. Later in the evening he saw both of them in the lobby.

Officer Houchen of the Los Angeles Police Department saw

the appellant about 2:30 a. m. at the rear door of the theatre. He testified: "We were cruising the parking lot with our lights out, just approaching the rear of the theatre, . . . and at the right rear exit door, Mr. Harris was standing there more or less hugged up against the door. We approached **Mr. Harris** and at this time we asked him what he was doing. He stated that . . . his car was out of commission, which was parked up on the next street off of the parking lot, . . ." He told the officers he was waiting for someone to come and pick him up. About 15 or 20 minutes later the exit door opened and, as the officer approached, "the door slammed." Thereafter, about 3 a. m., Holt emerged from the theatre. He said he had fallen asleep therein. On his person were a screwdriver, a spring-blade knife, and a New York operator's license bearing a name different from his own. Inside the theatre, on the cashier's door were gouge marks "made by approximately a 5/16 inch instrument."

In his own defense, the appellant Harris testified that he went with Holt to the theatre about 9 p. m., paid for his admission, and watched the picture. The showing of the first picture ended about 11 p. m. Holt left his seat and did not return. The showing of pictures ended at 1:10 a. m. and the appellant left the theatre. He went to his car to find Holt but he was not there. The appellant made a telephone call and then went back to his automobile and waited. Thereafter he looked in some shops which were open, but he did not find Holt. Thinking that Holt might have fallen asleep in the theatre, he knocked on the front door. He then went to the rear door and knocked. The officers came. He told them that his car was out of commission. That was not true but he said it because he did not want to get his friend "in any unnecessary trouble." He had no intent to take anything out of the theatre and had no arrangement with Holt to do so. Holt had borrowed the screwdriver from a friend "to fix something in the house we have down in Hermosa Beach."

Holt testified that after he left the place where he and Harris had been sitting in the theatre, he later returned to the auditorium and sat down but did not try to return to where Harris was. He thereafter left again and went to the restroom where he fell asleep in a sitting position. The room was dark when he awoke. He left the theatre by a rear exit. The doors did not open at first and he shook and moved them. When he emerged, an officer handcuffed him. He did not take , the screwdriver out of his pocket in the theatre. He neither

entered the theatre with the intention to take anything nor formed such an intention after he entered. There was no arrangement with Harris to take anything.

"Section 1159 of the Penal Code provides that 'The Jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged. . . .' 'The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense.' (*People* v. *Greer,* 30 Cal.2d 589, 596 [184 P.2d 512]; see also *People* v. *Kehoe,* 33 Cal.2d 711, 713 [204 P.2d 321].)'' (*In re Hess,* 45 Cal.2d 171, at p. 174 [288 P.2d 5]; see also *People* v. *Gallagher,* 164 Cal.App.2d 414, 419 [330 P.2d 464]; *People* v. *Richardson,* 152 Cal.App.2d 310, 315 [313 P.2d 651]; *People* v. *Chester,* 138 Cal.App.2d 829, 831 [292 P.2d 573]; *People* v. *Kennedy,* 133 Cal.App.2d 693, 694 [284 P.2d 898].)

In support of the judgment, the People assert that it was proper to find the appellant guilty of trespass as defined in section 602, subdivision (j),[1] of the Penal Code. That definition is: "Every person who wilfully commits any trespass by either: . . . (j) Entering any lands, whether unenclosed or enclosed by fence, for the purpose of injuring any property or property rights or with the intention of interfering with, obstructing, or injuring any lawful business or occupation carried on by the owner of such land, his agent or by the person in lawful possession; . . . is guilty of a misdemeanor.'' After arguing that the evidence supported an inference that there was an entry with the intent to commit theft, the People state: ''. . . this entry with the inferential intent to commit theft constitutes a trespass as described by Penal Code Section 602(j). . . . Certainly an intent to commit theft is an intent to interfere with, obstruct or injure the complaining witness's theatre business.''

But the argument of the People is not persuasive. While it is true that a trespass is involved in a burglary in the sense that there is an entry which is an invasion of the possession of property of another without his invitation or consent (*cf. People* v. *Barry,* 94 Cal. 481, 483 [29 P. 1026]; *People* v. *Brittain,* 142 Cal. 8, 10 [75 P. 314, 100 Am.St.Rep. 95]), in this case in determining what constitutes a criminal

[1]The present subdivision (j) was added to section 602 of the Penal Code in 1941. (Stats. 1941, ch. 578, § 1, p. 1961.)

trespass we are confined to the statutory law. As stated in *People* v. *Whipple*, 100 Cal.App. 261, at page 262 [279 P. 1008] : "In this state the common law is of no effect so far as the specification of what acts or conduct shall constitute a crime is concerned. (§ 6, Pen. Code; 7 Cal.Jur. 841.)

 In order that a public offense be committed, some statute, ordinance or regulation prior in time to the commission of the act, must denounce it; likewise with excuses or justifications—if no statutory excuse or justification apply as to the commission of the particular offense, neither the common law nor the so-called 'unwritten law' may legally supply it." (See also *In re Harder*, 9 Cal.App.2d 153, 155 [49 P.2d 304].)

 Assuming that section 602, subdivision (j), of the Penal Code is applicable to a state of facts such as is presented in this case (*cf. People* v. *Corlett*, 67 Cal.App.2d 33, 50-51 [153 P.2d 595, 964]), it cannot be said that the intent charged in the information,[2] namely, an intent to commit theft, embraces any intent described in section 602, subdivision (j), namely, a purpose[3] to injure property or property rights or an intent to interfere with, obstruct, or injure a lawful business "carried on by the owner of such land, his agent or by the person in lawful possession."[4] As said in *People* v. *Whitlow,*

---

[2]Section 459 of the Penal Code is in part as follows: "Every person who enters any . . . building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." The specific intent expressly alleged in the information was the intent to commit theft. As the People have done on this appeal, we have limited our discussion to the specific intent as pleaded. This is in accord with *People* v. *Marshall,* 48 Cal.2d 394, wherein it was said at page 405 [309 P.2d 456] : "Since the decisions as to included offenses, so far as they relate to choice of a standard to measure what offenses are 'necessarily included' within the meaning of section 1159 of the Penal Code, have not expressly considered or decided the question of selection as between the language of the accusatory pleading and the statutory definition, we base our choice of the specific language of the accusatory pleading upon considerations of fairness to both parties." (See also *People* v. *Gallagher, supra,* 164 Cal.App.2d 414, 419; *People* v. *Marquis,* 153 Cal.App.2d 553, 557 [315 P.2d 57].)

[3]The word "purpose" appears to be used as synonymous with the word "intent." (See *People* v. *Bailey,* 72 Cal.App.2d Supp. 880, 883 [165 P.2d 558].)

[4]Although in their briefs neither appellant nor respondent has mentioned section 28 of the Code of Civil Procedure, it is to be noted that that section is as follows: "An injury to property consists in depriving its owner of the benefit of it, which is done by *taking,* withholding, deteriorating, or destroying it." (Emphasis added.) While it is true that "for purposes of statutory construction the codes are to be regarded as blending into each other and constituting but a single statute" (*In re Porterfield,* 28 Cal.2d 91, 100 [168 P.2d 706, 167 A.L.R. 675]), it must not be overlooked that section 28 of the Code of Civil Procedure is to

113 Cal.App.2d 804, at pages 806-807 [249 P.2d 35]: "If, in the commission of acts made unlawful by one statute, the offender must always violate another, the one offense is necessarily included in the other. (*People* v. *Krupa,* 64 Cal.App.2d 592, 598 [149 P.2d 416].) Thus, before a lesser offense can be said to constitute a necessary part of a greater offense, all the legal ingredients of the corpus delicti of the lesser offense must be included in the elements of the greater offense. (*People* v. *Greer, supra.*) ▮ It therefore follows that if an element necessary to establish the corpus delicti of the lesser offense is irrelevant to the proof of the greater offense, the lesser cannot be held to be a necessarily included offense."

▮ While the trial court could not convict the appellant of criminal trespass since that offense was not an offense necessarily included in that charged in the information, the action of the court constituted an acquittal of the appellant of the charge of burglary. (*In re Hess, supra,* 45 Cal.2d 171, 176.)

The judgment is reversed.

Vallée, J., concurred.

Shinn, P. J., concurred in the judgment.

---

be read in the light of section 25 which provides that a "civil action arises out of—1. An obligation; 2. An injury," and section 27 which provides that an "injury is of two kinds: 1. To the person; and 2. To property," whereas section 31 is as follows: "The Penal Code defines and provides for the prosecution of a criminal action." The Supreme Court said in *Ponsonby* v. *Sacramento Suburban Fruit Lands Co.,* 210 Cal. 229, at page 233 [291 P. 167]: "The definition of 'injury to property' found in section 28 of the Code of Civil Procedure, in California, is merely a general definition, and that section does not control the interpretation of later amendments. (*Mason* v. *Buck,* 99 Cal.App. 219 [278 P. 461].)" The rule applicable to the interpretation of section 602 of the Penal Code is stated in *People* v. *Carskaddon,* 49 Cal.2d 423, at page 425 [318 P.2d 4]: "Penal provisions are to be construed according to the fair import of their terms, with a view to effect their objects and to promote justice." To hold that an intent to steal embraces either an intent to injure property or an intent to injure property rights is to fail to give the words of subdivision (j) of section 602 of the Penal Code "an interpretation which will accord with the usual, natural, or ordinary meaning attributed to them." (*People* v. *Lovelace,* 97 Cal. App. 228, 230 [275 P. 489].) It is more reasonable to conclude that the Legislature in 1941 employed the language embodied in subdivision (j) according to its general usage and not in the sense of section 28 of the Code of Civil Procedure. (*Cf. Graham* v. *Mixon,* 177 Cal. 88, 90-91 [169 P. 1003, L.R.A. 1918F 1023].)