[Crim. No. 19056. In Bank. Apr. 30, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY THOMAS CAMDEN, Defendant and Appellant.

810

**COUNSEL**

F. Elaine Easley, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Juliet H. Swoboda, David R. Chaffee and William R. Weisman, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

WRIGHT, C. J.—Defendant Larry Thomas Camden appeals from a judgment upon a jury conviction of kidnaping. (Pen. Code, § 207.)[1] He contends that as a matter of law the evidence is insufficient to support a conviction of kidnaping because the victim entered his car voluntarily and because such force as was used to restrain her thereafter was not sufficient under applicable law. He also contends that his trial counsel was ineffective because he failed to raise certain crucial defenses. We conclude that neither of the foregoing contentions has merit and affirm the judgment.

Shortly after 11 a.m. on September 17, 1974, Kathleen Perry arrived at the Ardco employment agency in search of employment. She had walked from her mother's home, a distance of two to three miles. After a brief wait she was instructed to report to a business address for a job interview at 1 p.m. the same day. Defendant had entered the Ardco offices while Kathleen was there and had spoken to the same agency attendant who had instructed Kathleen. Kathleen left the agency office at approximately 11:30 a.m. Defendant left shortly thereafter.

Kathleen walked away from the agency office in the direction of the place of business where she was to be interviewed at 1 p.m. At approximately 11:45 a.m. defendant stopped his car near Kathleen and offered her a ride. Kathleen, who had noticed defendant at the agency office, voluntarily entered the car. After driving a short distance in the direction Kathleen was walking defendant turned onto an entrance of a freeway proceeding in an entirely different direction. Kathleen immediately protested that she wished to be taken home or be permitted to leave the car. As the car entered the freeway Kathleen, in an attempt to escape, reached over to the handle of the car door; defendant seized her by the arm and pulled her back. While they remained on the freeway Kathleen did not again attempt to escape from the vehicle because defendant was driving between 60 and 70 miles per hour by Kathleen's estimate.

Kathleen continued to plead with defendant to stop the car and permit her to leave. Defendant repeatedly responded that he was taking her to his home where he intended to have sexual relations with her. On one occasion he attempted to fondle her breast but she struck his hand away.

---

[1]Penal Code section 207 provides in pertinent part: "Every person who forcibly steals, takes, or arrests any person in this state, and carries him into another country, state, or county, or into another part of the same county . . . is guilty of kidnaping."

All code references are to the Penal Code unless otherwise indicated.

Between one-half and three-quarters of an hour after Kathleen had entered defendant's car he drove off the freeway and proceeded along a route which could have led to his home. As the automobile stopped at an intersection Kathleen succeeded in opening the door on the passenger side but defendant abruptly turned the car to the right, accelerated around a corner and caused the door to slam shut. The next time the vehicle turned at a corner Kathleen jumped out and successfully escaped although she received painful lacerations when she fell to the road surface.

Defendant testified at trial that although he had been at the Ardco agency on the particular morning, he had not noticed Kathleen and had not offered her a ride afterwards. He stated that he went directly from the Ardco office to visit a friend. The friend confirmed a brief visit but could only broadly recall the time thereof as being between 11 a.m. and noon.

Defendant urges that since the victim entered the car voluntarily the evidence is insufficient as a matter of law to support the judgment of conviction of kidnaping and that the facts will sustain no more than a conviction of false imprisonment. Defendant relies on *People* v. *Stephenson* (1974) 10 Cal.3d 652 [111 Cal.Rptr. 556, 517 P.2d 820], and *People* v. *Rhoden* (1972) 6 Cal.3d 519 [99 Cal.Rptr. 751, 492 P.2d 1143]. His reliance on *Stephenson* is misplaced in light of a distinguishing factual situation. In addition defendant's contention is in conflict with established precedent and contrary to legislative intent.

We "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence [citations]. . . . The test on appeal becomes whether substantial evidence supports the conclusion of the trier of fact . . . . [Citations.]" (*People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].)

Notwithstanding defendant's claim to the contrary, it clearly appears on the instant record that although initial entry was voluntary, defendant used force to restrain the victim in the car while asportation continued over both a substantial distance and a substantial period of time. When Kathleen first attempted to leave the vehicle defendant pulled her back. Later she was prevented from leaving the automobile because of the high rate of speed at which the car was being driven. Defendant frustrated the victim's second escape attempt by the applica-

tion of centrifugal force which developed from a sudden right turn. Finally, she jumped out of the moving car in order to gain her freedom and in doing so incurred painful injuries.

In *Stephenson* the defendant was convicted of kidnaping three persons for purposes of robbery in two separate incidents. The first victim was led to believe that defendant was operating an airport taxi. The defendant stopped his car short of its destination, robbed and beat the victim, pulled him from the car and drove off. The second and third victims, a husband and wife, also met the defendant at the airport where he offered to drive them to their destination. After a meandering journey, at a dead end intersection, the defendant robbed the husband, ordered both victims out of the car and told the husband to run fast or "I will kill your wife." The defendant then forced the wife back into the car and drove off. He later raped her and took her money. In each incident the victims questioned the route which defendant took but no one of them asked to nor attempted to leave the vehicle. Upon inquiry the defendant assured them that he was proceeding to their destinations. At no time during these journeys did the defendant threaten or force the victims to remain in the car while asportation continued.

We reversed the judgment in *Stephenson* as to the convictions of kidnaping the male victims and affirmed as to the conviction of kidnaping the wife of the second male victim. In doing so we noted: "The distinction is that [the wife] *was forcibly* required by defendant to get into his car against her will and that he transported her several blocks for the purpose of committing robbery, and then raped her. The two men, and originally [the wife] were enticed to get voluntarily into defendant's car by deceit or fraud. . . . [Defendant] did not forcibly require any of them to enter his car initially." (*People* v. *Stephenson, supra,* 10 Cal.3d 652 at pp. 659-660; italics in original.) In light of our previously established rule that "a general act of kidnaping . . . can only be accomplished by the use of threat or force" (*People* v. *Rhoden, supra,* 6 Cal.3d 519, at p. 527), the circumstances in *Stephenson* compelled reversal of the convictions for the kidnaping of the two men.

The critical distinction between the accused's conduct directed to the male victims in *Stephenson* and the conduct in the instant case is the defendant's use of force in accomplishing the asportation. In *Stephenson* there was no threat or force used to restrain the victims during the initial asportation. Asportation was induced only by misrepresentation prior to the time the wife was forced back into the car. Force was employed

against the two male victims only after the vehicle had come to a stop and then only for the purpose of *robbing* them. In the instant case, however, defendant used force to keep the victim in the car while asportation continued. Thus the facts of the present case include that essential element of a general act of kidnaping, asportation by use of threat or force. (See *People* v. *Rhoden, supra,* 6 Cal.3d 519, at p. 527.) ■ "[W]here the victim has at first willingly accompanied the accused, the latter may nevertheless be guilty of kidnaping if he subsequently restrains his victim's liberty by force and compels the victim to accompany him further." (*People* v. *Gallagher* (1958) 164 Cal.App.2d 414, 420 [330 P.2d 464]; accord, *People* v. *Trawick* (1947) 78 Cal.App.2d 604, 606 [178 P.2d 45]; *People* v. *Flores* (1944) 62 Cal.App.2d 700, 702-703 [145 P.2d 318]; *People* v. *Ogden* (1940) 41 Cal.App.2d 447, 450, 456 [107 P.2d 50].) We now confirm the continued vitality of the stated rule.

In regard to a "general act of kidnaping," section 207 encompasses any movement of a victim which is substantial in character (*People* v. *Stanworth* (1974) 11 Cal.3d 588, 601 [114 Cal.Rptr. 250, 522 P.2d 1058]), and accomplished by means of force or threat of force (*People* v. *Rhoden, supra,* 6 Cal.3d 519, at p. 527). Since " '[t]he statute is to be given effect in its commonsense meaning [citations]' " (*People* v. *Stanworth, supra,* 11 Cal.3d 588, at p. 601), it would be unreasonable to conclude that the Legislature intended to exclude from the scope of section 207 those asportations which although voluntarily initiated are continued by means of threat or force.[2]

■ We conclude that a conviction of a violation of section 207 will not be reversed on appeal if supported by substantial evidence that although initial entry into a vehicle was voluntary, the victim was subsequently restrained therein by means of threat or force while asportation continued.[3] ■ It is manifest that the record provides

[2]The facts of the instant case are analogous to those in *People* v. *Stanworth, supra,* 11 Cal.3d 588. In that case we affirmed a conviction under section 207 although the initial movement of the victims in a car was accomplished without force or threat, because the defendant thereafter stopped the car and forced the victim to walk one-quarter of a mile.

[3]We note that in light of our affirmance in *Stephenson* of the judgment as to the conviction of kidnaping the wife, a contrary conclusion here would reduce to absurdity the distinction between kidnaping and false imprisonment where there is an initial voluntary entry into a vehicle. An accused forceful enough to restrain his victim inside the car could, under the contention urged by defendant, only be convicted of false imprisonment regardless of the amount of force used or how far asportation continued. On the other hand the careless or relatively passive accused who allowed his victim momentarily to leave the vehicle before being forced to return during the course of asportation would be guilty of kidnaping.

substantial evidence that the victim herein was forcibly restrained within the vehicle while asportation continued. (*People* v. *Mosher, supra,* 1 Cal.3d 379, at p. 395.)[4]

■ Defendant also contends that he was denied effective trial counsel assistance. As specific instances of incompetence defendant asserts that trial counsel at no time raised the defense of insufficiency of the evidence, neglected to request a jury instruction on false imprisonment and failed to object to the giving of CALJIC No. 1.23[5] (definition of consent) subsequent to the giving of CALJIC No. 9.26[6] (no kidnaping when consent freely given).

■ "Where trial counsel fails to make careful inquiries and investigations which result in withdrawing a crucial defense from the case he deprives the defendant of the assistance to which he is entitled. [Citations.]" (*People* v. *Stephenson, supra,* 10 Cal.3d 652, at p. 661.) To justify reversal on the ground of ineffective assistance of counsel " 'an extreme case must be disclosed' [citations]" (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]) in which counsel "did not effectively supply to a defendant those skills and legal knowledge which we can reasonably expect from any member of the bar." (*People* v. *Cook* (1975) 13 Cal.3d 663, 672-673 [119 Cal.Rptr. 500, 532 P.2d 148].)

■ As we have indicated, the defense urged at trial was alibi. The jury was presented with evidence in support of that theory—primarily defendant's testimony. This was rebutted by persuasive evidence that defendant had in fact transported Kathleen over substantial distances by

---

[4]Evidence that asportation was initiated voluntarily remains relevant to a determination by the trier of fact on the issue of the alleged victim's consent to continued asportation. Although not involved in the instant case, evidence of a prior close relationship between the parties, such as marriage or other romantic or family ties, is similarly relevant although likewise not dispositive where there is substantial evidence that asportation was induced or continued by means of threat or force.

[5]CALJIC No. 1.23 as given provided: "To constitute consent on the part of a person to a criminal act or transaction, he must act freely and voluntarily and not under the influence of fraud, threats, force or duress; he must have knowledge of the true nature of the act or transaction involved; and he must possess sufficient mental capacity to make an intelligent choice whether or not to do something proposed by another. In law, consent differs very materially from assent. The former denotes a free will, a positive state of mind, and positive cooperation in act or attitude. Assent, however, means mere passivity or submission and does not amount to consent."

[6]CALJIC No. 9.26 as given provided: "When a person in the exercise of his own free will, and with knowledge of what is taking place with respect to his person, voluntarily and willingly consents to accompany another, the latter cannot be guilty of kidnaping the former so long as such condition of consent exists."

means of force during the crucial time. Under the circumstances the jurors were left with but two alternatives: they could believe defendant and return a verdict of acquittal, or they could believe the contrary evidence and find defendant guilty of kidnaping.

In light of the alternatives presented by the evidence it cannot be said that counsel's election to rely on the alibi resulted "in withdrawing a crucial defense from the case." Counsel competently urged and presented evidence in support of that theory of defense which failed only because the People's evidence, as viewed by the jury, was more persuasive.[7]

It further appears that an instruction on false imprisonment was not called for as the fact of asportation was not substantially questioned and the evidence permitted only acquittal or conviction of kidnaping. Nor could defense counsel's failure to object to the giving of the consent instruction (CALJIC No. 1.23) have resulted in the withdrawal of a crucial defense. The crime of kidnaping, of course, occurred only when the victim was forcibly restrained from leaving the vehicle during asportation. The giving of the consent instruction, however, is claimed to have permitted an inference that the jury could have convicted defendant of kidnaping should it have found that he only fraudulently induced the victim to enter the vehicle and submit to asportation. But the evidence that the victim was forcibly detained during asportation is so overwhelming that the trier of fact, having rejected defendant's alibi, must be deemed to have found inter alia that the asportation was accomplished by means of force, and thus no prejudice could have resulted from a permissible inference that defendant was also guilty of a fraudulent misrepresentation.[8]

"The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant." (*People* v. *Stephenson, supra,* 10

---

[7]The record before us does not include closing argument by counsel. Therefore we are unable to determine the accuracy of defendant's assertion that his trial counsel did not argue insufficiency of the evidence. "The proof of . . . inadequacy or ineffectiveness [of counsel] must be a demonstrative reality and not a speculative ·matter. [Citations.]" (*People* v. *Stephenson, supra,* 10 Cal.3d 652, at p. 661.)

[8]*People* v. *Rhoden, supra,* 6 Cal.3d 519 is inapposite. In that case, among the several "crucial assignments of error" not raised by appellate counsel, we noted the failure to claim error in giving CALJIC No. 1.23 after CALJIC No. 9.26 because it permitted the jury to convict for kidnaping on proof of fraud alone when the only act of kidnaping of which the defendant was charged was one grounded on force and there was no substantial evidence of such force. (*Id.,* at pp. 526-527.) Here, of course, there is substantial evidence of force upon which the kidnaping is charged and based.

Cal.3d 652, at p. 661.) In the present case defendant has wholly failed to sustain that burden.

The judgment is affirmed.

McComb, J., Tobriner, J., Mosk, J., Sullivan, J., Clark. J., and Richardson, J., concurred.