[No. H008648. Sixth Dist. May 22, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JESSE GILBERT CORTEZ, Defendant and Appellant.

## COUNSEL

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugyiama, Assistant Attorney General, Aileen Bunney and Joan Killeen Haller, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CAPACCIOLI, Acting P. J.**—Defendant was convicted of kidnapping and allegations of two prior convictions were found true. He was sentenced to 13 years in state prison. He asserts that his conviction must be reversed because the trial court failed to sua sponte instruct the jury that it must unanimously agree on the specific act which formed the basis for the conviction. With respect to his sentence, he challenges the validity of Penal Code[1] section 667 and asserts that the trial court had discretion, which it failed to exercise, granted by section 667, to impose concurrent terms for the enhancements arising out of the two prior convictions. For the reasons expressed below, we affirm.

### FACTS

Carol R. had been having an intimate relationship with defendant for about a year. On October 20, 1990, defendant spoke with Carol at her

---

[1]Statutory references are to the Penal Code unless otherwise specified.

mother's house. Carol told defendant that she didn't want to see him anymore and defendant became angry. Defendant wanted Carol to go to the park with him and, because she didn't want to argue with him, Carol went. Defendant drove her over to a park about three blocks away. The two of them sat down on the grass and talked for a while. Defendant then lay down and fell asleep. Carol walked back to her mother's house leaving defendant in the park. Carol later went over to her friend Ava's house. Ava was asleep so Carol talked to Ava's brother Johnny.

Defendant came to the door looking for Carol. He said he wanted to talk to her. Carol said she didn't want to talk to him and told him to leave. Defendant came into the house and grabbed Carol by the arm. She said she wanted to stay there and asked him to leave. Holding her arm, defendant pulled her out of the house and put her in his car. Carol fell down several times as defendant was dragging her to the car. Johnny saw defendant drag Carol by her arm and force her into his car. He also heard Carol screaming in protest. Defendant's brother Mike was already in the car. There were other people outside the house and Carol yelled for help. No one did anything. Carol tried to get out of the car but defendant wouldn't let her. She was seated in between defendant and Mike.

Mike drove the car over to defendant's mother's house. Carol told defendant that she wanted to leave and go home but he wouldn't let her. She told him to let her out of the car. He said "no, you're not going anywhere." Mike got out of the car. Defendant got into the driver's seat. Defendant and Carol argued for about half an hour. Carol again told defendant that she didn't want to see him anymore. Defendant punched her in the nose. Carol's nose began bleeding heavily. Carol cried and told defendant that she wanted to get out of the car. She tried to get out of the car. Defendant wouldn't let her out of the car. Fifteen to twenty minutes later, defendant drove away with her.

While the car was moving, Carol opened the car door to try to get out a couple of times but defendant kept shutting the door. At an intersection, Carol tried to get out of the car. Defendant told her to shut up and hit her in the eye. Carol screamed for help.

Isaac Navarro noticed defendant's car when it swerved to avoid hitting his car. Defendant was driving at a high rate of speed. When Isaac reached the next intersection, defendant's car pulled in behind him. Isaac and his wife, Susan, noticed that defendant's car was shaking and the female passenger was trying to get out of the car. They saw defendant push the woman down underneath the dashboard. The woman pushed the door open and screamed for help. Isaac got out of his car and told defendant to let the woman go.

Defendant said he'd take care of it and waved Isaac on. Isaac again told defendant to let the woman go. Defendant pulled around Isaac's car and drove off. Isaac followed defendant.

Defendant kept on driving. He told Carol to take off her sweater. She did and he gave her another sweater to put on. Defendant also had Carol clean the blood off of her face.

Isaac saw a police officer and stopped and told him what he had observed. The officer proceeded to follow defendant's car. The officer could see the car weaving and rocking and it appeared that the driver was struggling with the passenger. The police car stopped defendant's vehicle and Carol ran from the car to the policeman screaming and crying. Defendant was arrested.

Defendant was charged by information with kidnapping (§ 207, subd. (a)). It was further alleged that defendant had previously been convicted of two serious felonies within the meaning of sections 667 and 1192.7, that he had served a prior prison term within the meaning of section 667.5, subdivision (b) and that he had been convicted of two felonies within the meaning of section 1203, subdivision (e)(4).

At trial, defendant's brother Mike testified that he went to the park to find defendant and then drove defendant to Ava's house to find Carol. Defendant got out of the car and went to the doorway of the house. Mike remained in the car. The next thing Mike noticed was that defendant and Carol were by the car arguing. Carol got into the car and defendant got in after her. They continued to argue. Carol did not ask to get out of the car. Mike drove the car to his mother's house. Mike got out of the car and went inside the house. Defendant got out of the car and got back in on the driver's side. Defendant and Carol sat in the car and argued for about 20 to 45 minutes. Defendant asked Mike for a towel and some ice because Carol's nose was bleeding. Mike gave him a towel and ice. Mike did not see Carol try to get out of the car. At some point, Mike noticed that Carol was crying. Eventually, defendant drove away with Carol.

Carol's nephew Lui, a good friend of defendant's, testified that he had seen Carol get into defendant's car at Ava's house and that Carol did so voluntarily. From a hundred to a hundred fifty feet away, Lui saw Carol and defendant argue and saw them get into the car.

Defendant was convicted of kidnapping and the allegations of prior convictions and a prior prison term were found true. He received the lower term of three years for the kidnapping. Two consecutive five-year enhancements were imposed for the prior convictions. The prior prison term enhancement was stricken. Defendant was committed to state prison for a total term of 13 years.

## DISCUSSION

### A. *Failure to Give Unanimity Instruction*

■ Defendant challenges his conviction on the ground that the trial court erred by failing to sua sponte instruct the jury that in order to find defendant guilty it must unanimously agree on the specific conduct which formed the basis for the conviction. Defendant argues that there were three distinct movements, any of which could have formed the basis for the jury's verdict: (1) the drive from Ava's house to defendant's mother's house; (2) the movement from defendant's mother's house to the intersection where the vehicle was observed by the Navarros; and (3) the asportation occurring between the intersection and the stopping of defendant's vehicle by the police. We disagree.

Kidnapping is a substantial movement of a person accomplished by force or fear. (§ 207, subd. (a); *People* v. *Camden* (1976) 16 Cal.3d 808, 814 [129 Cal.Rptr. 438, 548 P.2d 1110].) "[A]s long as the detention continues, the crime continues." (*People* v. *Masten* (1982) 137 Cal.App.3d 579, 588 [187 Cal.Rptr. 515]; *Parnell* v. *Superior Court* (1981) 119 Cal.App.3d 392, 407-408 [173 Cal.Rptr. 906].) The evidence at trial revealed no interruption in defendant's detention of Carol. It began when he forced her into the car at Ava's house and ended when the police stopped defendant's car and Carol escaped. Consequently, the kidnapping continued throughout the allegedly separate events singled out by defendant.

"[A] unanimity instruction is not required when the case falls within the continuous course of conduct exception." (*People* v. *Melendez* (1990) 224 Cal.App.3d 1420, 1428 [274 Cal.Rptr. 599].) This exception is applicable where, by its very nature, the charged offense consists of a continuous course of conduct. (*People* v. *Diedrich* (1982) 31 Cal.3d 263, 282 [182 Cal.Rptr. 354, 643 P.2d 971].) Kidnapping inherently involves a continuous course of conduct. (*People* v. *Ordonez* (1991) 226 Cal.App.3d 1207, 1231 [277 Cal.Rptr. 382].) The kidnapping herein was a prolonged detention which was at no point interrupted. Hence, a unanimity instruction was not required. (*Id.* at p. 1231; *People* v. *Melendez, supra,* 224 Cal.App.3d at p. 1428.)

### B. *Challenges to Section 667*

Section 667 was enacted by the voters as part of Proposition 8. Its provisions mandate enhancements for certain prior convictions. "In compliance with subdivision (b) of Section 1385, any person convicted of a serious

felony who previously has been convicted of a serious felony . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively." (Pen. Code, § 667, subd. (a).) Section 1385, subdivision (b) provides that a judge has no authority to strike a prior conviction of a serious felony for purposes of enhancement of a sentence under section 667.

"There is no requirement of prior incarceration or commitment for this section to apply." (Pen. Code, § 667, subd. (b).) "The provisions of this section shall not be amended by the Legislature except by statute passed in each house by rollcall vote entered in the journal, two-thirds of the membership concurring, or by a statute that becomes effective only when approved by the electors." (Pen. Code, § 667, subd. (f).)

### 1. *Proposition 4 Did Not Render Section 667 Inoperative*

"If provisions of 2 or more measures approved at the same election conflict, those of the measure receiving the highest affirmative vote shall prevail." (Cal. Const., art. XVIII, § 4 [applicable to initiative constitutional amendments]; Cal. Const., art. II, § 10(b) [applicable to initiative statutes]; *Taxpayers to Limit Campaign Spending* v. *Fair Pol. Practices Com.* (1990) 51 Cal.3d 744, 747 [274 Cal.Rptr. 787, 799 P.2d 1220].) "In the June 1982 election the voters passed Proposition 4, which amended California Constitution, article I, section 12, regarding bail. They also passed Proposition 8, the victim's bill of rights, which amended the criminal law in a variety of ways, including the enactment of Penal Code section 667 and changes in the law governing bail. Proposition 4 received a greater number of votes than Proposition 8." (*People* v. *Barrow* (1991) 233 Cal.App.3d 721, 722 [284 Cal.Rptr. 679] citing *Brosnahan* v. *Brown* (1982) 32 Cal.3d 236, 254-255 [186 Cal.Rptr. 30, 651 P.2d 274].)

■ Defendant contends that Proposition 8, including section 667, was rendered inoperative by the passage, by a greater number of votes, of Proposition 4. He relies upon the California Supreme Court's decision in *Taxpayers to Limit Campaign Spending* v. *Fair Pol. Practices Com.* (hereafter *Taypayers*). His reliance is misplaced. "We hold only that under [article II,] section 10(b) an initiative is inoperative in its entirety if the voters adopt, by a higher vote, an alternative comprehensive regulatory scheme governing the same subject. Our construction of section 10(b) does not foreclose operation of an initiative measure that receives an affirmative vote simply because one or more minor provisions happen to conflict with those of another initiative

principally addressed to other aspects of the same general subject. In the latter circumstance, if the principal purpose of the initiative can be accomplished notwithstanding the excision of the minor, incidental conflicting provisions, the remainder of the initiative can be given effect." (*Taypayers, supra,* 51 Cal.3d. at p. 771, fn. 12.)

The conflict between the bail provisions of Proposition 4 and Proposition 8 rendered the bail provisions of Proposition 8 inoperative. (*People v. Barrow, supra,* 233 Cal.App.3d at p. 723.) Nevertheless, the principal purposes of Proposition 8 could be, and have been, accomplished notwithstanding this minor excision. (*Ibid.*) Hence, under *Taxpayers,* the major provisions of Proposition 8, including section 667, were not rendered inoperative by Proposition 4. (223 Cal.App.3d at p. 723.)

## 2. *Amendment Procedure Valid*

Defendant claims that the Legislature's amendment of section 667 in 1986 to remove the trial court's discretion to strike the enhancements was ineffective because it was accomplished by the means specified in section 667, subdivision (f) and that provision is unconstitutional. Defendant asserts that the procedure specified by section 667, subdivision (f) imposes an unconstitutional supermajority requirement. Even a requirement of a supermajority of *voters* may constitutionally be imposed. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 227-228 [149 Cal.Rptr. 239, 583 P.2d 1281]; *Gordon* v. *Lance* (1971) 403 U.S. 1, 5 [29 L.Ed.2d 273, 276, 91 S.Ct. 1889].) Extraordinary majority provisions applicable to legislative bodies have less constitutional implications than those applicable to individual voters because *legislators* have no constitutionally protected voting rights. Consequently, a supermajority requirement may be imposed on a legislative body without offending the constitution.

Defendant also contends that section 667, subdivision (f) is invalid because it is inconsistent with constitutional provisions governing the amendment of statutes. We see no inconsistency. "The Legislature may make no law except by statute and may enact no statute except by bill . . . . No bill may be passed unless . . . a majority of the membership of each house concurs." (Cal. Const., art. IV, § 8, subd. (b).) "The Legislature . . . may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval." (Cal. Const., art. II, § 10, subd. (c).)

Section 667, subdivision (f) is consistent with these provisions. As provided by article II, section 10, subdivision (c) of the state Constitution,

section 667, subdivision (f) allows for amendment of section 667 without voter approval only where the Legislature meets a supermajority requirement. In accordance with article IV, section 8, subdivision (b) of the state Constitution, section 667, subdivision (f) requires at least a majority vote in the Legislature. That section 667, subdivision (f) requires more than a majority is in no way inconsistent with article IV, section 8, subdivision (b)'s restriction on the passage of bills to those bills which obtain the approval of a majority. Clearly a bill which obtains the approval of two-thirds of the membership of each house has also obtained the approval of a majority of the legislators in each house.

There being nothing unconstitutional or inconsistent in section 667, subdivision (f), the Legislature's utilization of its procedure for amendments to section 667 was proper and the resulting amended statute is valid.

### 3. *No Equal Protection Violation*

■ Defendant challenges section 667 as violative of equal protection. Because an individual who is convicted of a serious felony and serves a prison term could be charged, in the discretion of the prosecutor, with the one-year enhancement authorized by section 667.5 or the five-year enhancement authorized by section 667, but an individual convicted of a serious felony who received probation could only be charged with the five-year section 667 enhancement, defendant argues that the statutory scheme violates equal protection. Essentially, defendant's complaint is that the Legislature failed to authorize a counterpart enhancement to section 667.5 for those defendants who receive probation, instead of a prison term, as punishment for their serious felony conviction.

Defendant purports to challenge section 667 but he aims his argument at the distinction made in section 667.5. Defendant lacks standing to challenge the constitutionality of section 667.5. ■ "One who seeks to raise a constitutional question must show that his rights are affected injuriously by the law which he attacks and that he is actually aggrieved by its operation." (*People* v. *Black* (1941) 45 Cal.App.2d 87, 96 [113 P.2d 746].) ■ Any distinction made by section 667.5 did not injuriously impact defendant since his sentence was not enhanced under section 667.5. Consequently, we need not consider the merits of defendant's attempted challenge to section 667.5 on equal protection grounds.

■ Furthermore, the differing application of the two sections is supported by the variance in the goals of the two enhancements. "The purpose of section 667 is to punish repeat offenders regardless of whether they were imprisoned for their previous felony. An offender who was placed on

probation for conviction of a prior serious felony could have his or her sentence enhanced for five years under section 667, subdivision (b) even though the offender never served a day in prison. The purpose of section 667.5, subdivision (b) is to impose a one-year enhancement to the offender's sentence for each separate term of imprisonment served as a continuous period of time by the offender." (*People* v. *Medina* (1988) 206 Cal.App.3d 986, 990 [254 Cal.Rptr. 89].) "The policies of each section are distinct. The purpose of section 667 is to impose greater punishment upon recidivists who commit serious felonies. The purpose of section 667.5 is to impose additional punishment upon a felon whose prior prison term failed to deter him or her from *future* criminal conduct." (*Id.* at p. 991.)

While a defendant may be charged with both a section 667 enhancement and a section 667.5 enhancement arising from a single conviction, imposition of punishment for both enhancements will be barred by section 654's restriction on multiple punishment for a single act. (*People* v. *Hopkins* (1985) 167 Cal.App.3d 110, 117-118 [212 Cal.Rptr. 888].) However, where the prison term arose out of multiple serious felony convictions, section 667 and section 667.5 enhancements may both be imposed without offending section 654. (*People* v. *Medina, supra,* 206 Cal.App.3d at pp. 990-992.)

Section 667 "subjects all defendants convicted of a serious felony who have a prior serious felony conviction to the section 667 enhancement, regardless of section 667.5." (*People* v. *Smith* (1988) 206 Cal.App.3d 599, 603 [253 Cal.Rptr. 673].) Defendant does not suggest that the classification embodied in section 667 is violative of equal protection except when viewed in light of section 667.5. Instead, defendant argues that the total effect of the two code sections is a limitation on the prosecutor's charging alternatives with respect to defendants who served no prior prison terms. In his brief, he states that a defendant who served a prior prison term for a prior serious felony conviction "can receive *either* a one-year enhancement under section 667.5, subdivision (a) or a five-year enhancement under section 667 *depending solely on the charging practices of the prosecutor* who prepares the information." (Italics added.) A defendant with a prior serious felony conviction who served no prison time "can receive *only* [a] five-year enhancement pursuant to Penal Code section 667." In defendant's view, "[t]his disparity in treatment of the defendant who is presumably less culpable violates equal protection."

Since defendant has no standing to challenge section 667.5 and fails to assert any basis for a challenge to section 667, his only remaining basis for an equal protection challenge is an assertion that the statutes permit the prosecution to practice invidious discrimination in charging. This argument

is also unavailing. "[T]here is no equal-protection violation in vesting in the public prosecutor the discretion to charge a prior serious felony under one or the other of sections 667 or 667.5, subdivision (b)." (*People* v. *Wallace* (1985) 169 Cal.App.3d 406, 411 [215 Cal.Rptr. 203].)

■ "The equal protection clause, of course, has never been thought to abrogate a prosecutor's authority to exercise leniency in the charging process." (*Davis* v. *Municipal Court* (1988) 46 Cal.3d 64, 87 [249 Cal.Rptr. 300, 757 P.2d 11].) Nevertheless, "[s]electivity in the enforcement of criminal laws is, of course, subject to constitutional constraints." (*United States* v. *Batchelder* (1979) 442 U.S. 114, 125 [60 L.Ed.2d 755, 765-766, 99 S.Ct. 2198].) "[T]he equal protection guarantee simply prohibits prosecuting officials from purposefully and intentionally singling out individuals for disparate treatment on an invidiously discriminatory basis." (*Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286, 297 [124 Cal.Rptr. 204, 540 P.2d 44].)

"[I]n order to establish a claim of discriminatory enforcement a defendant must demonstrate that he has been deliberately singled out for prosecution on the basis of some invidious criterion." (*Murgia* v. *Municipal Court, supra*, 15 Cal.3d at p. 298.) Invidious discrimination is that which is based on an unjustifiable standard such as race or religion. (*Id.* at p. 299.) Defendant does not even attempt to make a showing of discriminatory enforcement of section 667. Consequently, defendant's equal protection challenge to section 667 fails.

### C. *Section 667 Mandates Consecutive Terms*

■ Defendant challenges the court's imposition of two consecutive terms for the section 667 enhancements. While enhancement terms under section 667 must be consecutive to the principal term, defendant asserts that section 667 grants the trial court discretion to make the terms for multiple section 667 enhancements concurrent to each other. Defendant's contentions are contrary to the clear language of the statute.

"[A]ny person convicted of a serious felony who previously has been convicted of a serious felony . . . shall receive, *in addition* to the sentence imposed by the court for the present offense, *a five-year enhancement for each* such prior conviction on charges brought and tried separately. The *terms* of the present offense and *each* enhancement *shall run consecutively*." (§ 667, subd. (a), italics added.) Section 667 is unambiguous. Not only are the enhancements to run consecutively to the principal term, but each enhancement term shall run consecutively to the other enhancement terms. (*People* v. *Valencia* (1989) 207 Cal.App.3d 1042, 1046-1047 [255 Cal.Rptr.

180].) We decline to contort the plain language of the statute to imply a grant of discretion where the Legislature so clearly intended to make consecutive terms mandatory.

CONCLUSION

The judgment is affirmed.

Premo, J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 12, 1992.