108 Cal.Rptr.2d 514 (2001)
90 Cal.App.4th 88
Vidal BRAVO et al., Petitioners,
v.
SUPERIOR COURT of Kern County, Respondent; The People, Real Party in Interest.
No. F037557.
Court of Appeal, Fifth District.
June 22, 2001.
Review Granted September 12, 2001.
*515 Randall B. Dickow, Bakersfield, for Petitioner Vidal Bravo, and David A. Torres, Bakersfield, for Petitioner Jose Ramirez.
No appearance for Respondent.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Senior Assistant Attorney General, Stan Cross and Susan J. Orton, Deputy Attorneys General, for Real Party in Interest.

OPINION
ARDAIZ, P.J.

INTRODUCTION
On March 7, 2000, the voters of California approved Proposition 21, known as the "Gang Violence and Juvenile Crime Prevention Initiative" (Proposition 21). Section 26 of Proposition 21 is the subject of this writ proceeding. Section 26, codified as section 707 of the Welfare and Institutions Code,[1] replaced the former section 707, subdivision (d) in its entirety. The new section 707, subdivision (d) provides the prosecuting attorney with discretion to file certain criminal charges against youths *516 in adult criminal court (adult court) or in the juvenile court. Accordingly, Proposition 21 provides the prosecuting attorney with the discretion to file charges in adult court and thereby limits the trial court's discretion in sentencing to the sentencing scheme available to adults. Petitioner raises various challenges to the constitutionality of Proposition 21 as set forth below.

STATEMENT OF THE CASE AND PROCEDURAL HISTORY
This writ proceeding arises out of a criminal prosecution in Kern County. The district attorney filed a four-count information in respondent court on December 6, 2000, after a four-day preliminary examination. The information alleged petitioner Vidal Bravo and two co-defendants had murdered Robert Milam in violation of Penal Code section 187, subdivision (a). The first count of the information further alleged that the murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle, was committed while petitioner was an active participant in a criminal street gang, and that the murder was committed for the benefit of, at the direction of, or in association with a criminal street gang and with the specific intent to promote, further, or assist in criminal conduct by gang members. A firearms enhancement was also alleged. Finally, pursuant to section 707, subdivisions (d)(1) and (d)(3)(A), the information alleged that petitioner was 16 years of age or older when the murder was committed and that he had previously been found to be a ward of the juvenile court by reason of committing a felony when he was at least 14 years old.
Counts 2 and 3 charged petitioner with the attempted murders of Manuel Arviso and Filiberto Ruiz, and also alleged firearm, drive-by shooting, criminal street gang allegations, and eligibility for direct filing in adult court. Count 4 alleged petitioner had willfully and unlawfully carried a handgun for the benefit of, at the direction of, or in association with a criminal street gang and that he had previously been adjudged a ward of the juvenile court.
Petitioner then filed a timely motion to set aside the information pursuant to Penal Code section 995. The motion was based on the grounds that Proposition 21:(1) violates the single-subject rule; (2) violates the separation of powers by improperly giving judicial power to the executive branch; (3) that the text of the statute was improperly altered; and (4) violates equal protection laws. The motion was denied, and the trial court noted that the issues were questions of first impression, and encouraged petitioner to seek relief from this court. Petitioner Bravo subsequently filed the writ which is now before us. Petitioner Ramirez joined in the petition filed by Bravo. We ordered a stay of the proceedings below on March 23, 2001. As he did below, petitioner argues that section 707, subdivision (d) is invalid because Proposition 21 violates the single-subject rule, the separation of powers doctrine, equal protection and that the text of the statute was improperly altered.
We are not the first court of appeal to consider this issue. In Manduley v. Superior Court (2001) 86 Cal.App.4th 1198, 104 Cal.Rptr.2d 140 (Manduley), review granted April 25, 2001, the Fourth District concluded that section 707, subdivision (d) violated the separation of powers doctrine. For the reasons set forth below, we disagree and therefore consider petitioners other challenges to the statute. We reject the other challenges as well and deny the petitions.

*517 DISCUSSION

Separation of Powers
At the outset we are compelled to point out that we are not called upon to review the wisdom of the policy determination made by the people of the State of California when enacting Proposition 21 (and thereby section 707, subd. (d)). Rather, the question before us is whether allowing the prosecutor the discretion to file (or not) certain types of crimes committed by juveniles in adult court violates the separation of powers doctrine. (See Estate of Horman (1971) 5 Cal.3d 62, 77, 95 Cal. Rptr. 433, 485 P.2d 785 ["Courts do not sit as super-legislatures to determine the wisdom, desirability or propriety of statutes enacted by the Legislature. [Citations.]"].) With this view of our role in mind, we conclude section 707, subdivision (d) does not violate the separation of powers doctrine.

General Principles
Article III, section 3 of the California Constitution provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." The separation of powers doctrine is also implicit in the United States Constitution. (Springer v. Philippine Islands (1928) 277 U.S. 189, 48 S.Ct. 480, 72 L.Ed. 845.) The charging function of a criminal case is within the sole province of the executive branch, which includes the Attorney General and the various district attorneys (Cal. Const, art. V, § 13). (People v. Sidener (1962) 58 Cal.2d 645, 650, 25 Cal.Rptr. 697, 375 P.2d 641, overruled on other grounds in People v. Tenorio (1970) 3 Cal.3d 89, 91, 89 Cal. Rptr. 249, 473 P.2d 993 (Tenorio).) Once the executive power has been exercised by the filing of a criminal charge, "the process which leads to acquittal or to sentencing is fundamentally judicial in nature." (Tenorio, supra, 3 Cal.3d at p. 94, 89 Cal.Rptr. 249, 473 P.2d 993.) Thus the legislative branch bears the sole responsibility and power to define criminal charges and to prescribe punishment,[2] the executive branch decides what crime to charge, and the judicial branch imposes sentence within the legislatively determined limits for the chosen crime. (People v. Navarro (1972) 7 Cal.3d 248, 258, 102 Cal.Rptr. 137, 497 P.2d 481 (Navarro).) Separation of powers mandates that a statute may not constitutionally require the consent of one branch for the proper exercise of another branch's power, unless specifically provided for in the California Constitution. (See People v. Tenorio, supra, 3 Cal.3d at p. 94, 89 Cal.Rptr. 249, 473 P.2d 993; People v. Superior Court (Felmann) (1976) 59 Cal. App.3d 270, 275, 130 Cal.Rptr. 548.)
These basic principles of separation of powers are not in dispute. What is not clear, however, is whether section 707, subdivision (d)'s provision allowing the prosecutor the discretion to file charges directly in adult court is a decision regarding "what crime to charge" or a decision about sentencing. In other words, the question before us is how to classify the "power" created by section 707, subdivision (d).

Section 707, subdivision (d)
Section 707, subdivision (d) gives the prosecutor the discretion to either directly *518 file charges against certain juvenile offenders in adult court or to file charges in juvenile court and the court is then empowered to determine in a fitness hearing whether the juvenile should be subject to juvenile or adult court laws.[3] Prior to Proposition 21, the law provided that, in most cases, the prosecutor was required to bring proceedings against a juvenile in juvenile court. The juvenile court then would, upon motion of the prosecutor, conduct a fitness hearing to determine whether the juvenile should remain in the juvenile system or be transferred to adult court. (Former § 707, subd. (a).) In some circumstances the prosecutor was required to bring certain charges in adult court (former § 707.01), but under no circumstances was the prosecutor given the discretion to unilaterally decide whether or not to proceed against a juvenile in adult court. Proposition 21 allocates such discretion to the prosecutor under certain circumstances. (§ 707, subds. (a), (d). If, under section 707, subdivision (d) the prosecutor chooses to directly file charges in adult court and the juvenile is convicted of one of the qualifying offenses, the court must sentence the juvenile as an adult under the adult criminal sentencing laws. (Pen.Code, § 1170.17, subd. (a).)
Petitioner claims because sentencing is a traditionally judicial function, removing the option from the court of sentencing a juvenile offender under the juvenile laws is a violation of the separation of powers doctrine. The People maintain that because the prosecutor makes the discretionary filing decision under section 707, subdivision (d) before the charges are ever even before the court, it is an appropriate prosecutorial function properly allocated to the executive branch. The choice of forum for prosecuting a juvenile offender is not easily categorized as either a prosecutorial or a judicial function. The unclear nature of the power granted by section 707, subdivision (d) allows for at least two possible methods of analyzing the separation of powers issue. First, given the unchallenged fact that juvenile disposition is a privilege afforded to the youth of this state and not a right, are the voters free to restrict access to that system in any way they see fit? In other words, is the separation of powers doctrine violated given that the "power" being challenged is one that unquestionably can be eliminated entirely should the voters so desire. Second, in applying the traditional separation of powers analysis, does case law support the conclusion that the Legislature can allocate the determination of fitness for adult court to the executive branch prior to the filing of charges against a juvenile? We answer both of these questions in the affirmative and therefore conclude section 707, subdivision (d) does not violate the separation of powers doctrine.

Access to the Juvenile Justice System
The juvenile justice system is a statutory creation which unquestionably can be revoked by the Legislature (or the people directly through the initiative process) at any time. Similarly, it is undisputed that the Legislature could choose to require prosecutors to file certain charges directly in adult court, which would also remove any judicial "jurisdiction" over the issue. (Hicks v. Superior Court (1995) 36 Cal. App.4th 1649, 1657-1661, 43 Cal.Rptr.2d 269.) Petitioner's argument, however, is that once the Legislature (or the people) provide for alternative sentencing schemes *519 it is the role of the judiciary to choose between those alternative schemes, not the prosecutor. Thus, petitioner concludes, "having chose[n] to grant the court authority to conduct such fitness hearings (see [§ 707,] subd. (c)), the Legislature cannot condition the exercise of that authority on the prior approval of the district attorney."
We cannot help but recognize the glaring inconsistency in allowing the Legislature to mandate prosecution of certain juvenile offenses in adult court but prohibiting the Legislature from allocating the discretion to prosecute certain juvenile offenses in adult court. As set forth above and in the dissent in Manduley, supra, the entire juvenile system is a statutory creation, and is therefore a privilege granted by the Legislature that the electorate can restrict or modify as it sees fit. Thus, in our view there can be no "veto" of a power the judiciary is not exclusively authorized by the statute to have. If there is no constitutional right to the juvenile justice system, then the electorate should be able to place reasonable limitations on the availability of that system.
The reasonableness of the limitation before us is evident by the fact that the discretionary decision to file in adult court allocated to the district attorney by section 707, subdivision (d) is not readily identifiable as either a "traditional" judicial or executive function. As such, it is difficult for this court to embrace the idea that the separation of powers doctrine has been violated by allocating discretion to exercise a power not easily recognized as belonging to one branch as opposed to another in the first place. If the decision to prosecute a juvenile in adult court is not a traditional judicial function, what power has been usurped when the voters of California allocate that discretion, in limited circumstances, to the executive branch? Rather, we view the power granted by section 707, subdivision (d) as executive in nature at least in part because the Legislature (or, as here, the People) concluded that it should be.
We are not, of course, suggesting that the legislative branch of government can rearrange the functions of the other branches of government as it sees fit. There is no reason for this court to believe, however, that the judicial branch is more appropriately fit to determine where a case should be filed than the executive. Such a result cannot be said to undermine the ability of the judiciary to perform its function, and we should not extend ourselves to find it unconstitutional. Unless a statute's unconstitutionality "`clearly, positively, and unmistakably appears'" (Calfarm Ins. Co. v. Deukmejian (1989) 48 Cal.3d 805, 814, 258 Cal.Rptr. 161, 771 P.2d 1247), the judiciary should not interfere. If anything, it is appropriate for the legislative branch to allocate such a power to the executive branch. For this court to reserve that power for the judiciary, in our view, creates an equally substantial separation of powers issue. This is all the more true given that the separation of powers doctrine "`"has not been interpreted as requiring the rigid classification of all the incidental activities of government, with the result that once a technique or method of procedure is associated with a particular branch of the government, it can never be used thereafter by another...." Italics added.) [Citation.] Indeed, as a leading commentator on the separation-of-powers doctrine has noted: "From the beginning, each branch has exercised all three kinds of powers." [Citation.]' " (In re Attorney Discipline System (1998) 19 Cal.4th 582, 596, 79 Cal. Rptr.2d 836, 967 P.2d 49.) Given the statutory nature of the juvenile justice system and the fluid nature of the powers exercised by each branch of government we *520 see no constitutional flaw in the statute before us.
Petitioner nevertheless maintains that, under case law including Tenorio, supra, 3 Cal.3d 89, 89 Cal.Rptr. 249, 473 P.2d 993, we must find that section 707, subdivision (d) violates the separation of powers doctrine because a court's sentencing options are limited to those available to adults once the prosecutor decides to file charges in adult court. Thus, petitioner characterizes section 707, subdivision (d) as providing a preemptive "veto" power over the trial court's sentencing ability in violation of a long line of Supreme Court precedent. We disagree with petitioner's reading of Tenorio and its progeny.

Tenorio Line of Cases
Tenorio and its progeny are a series of cases finding various violations of the separation of powers doctrine where statutes allowed a prosecutor a "veto" power over traditional sentencing issues. (Tenorio, supra, 3 Cal.3d at pp. 94-95, 89 Cal.Rptr. 249, 473 P.2d 993 [court's ability to strike allegation for sentencing purposes cannot be conditioned on prosecutor's agreement]; Navarro, supra, 7 Cal.3d at pp. 258-260, 497 P.2d 481 [Legislature cannot condition court's decision to divert addict to treatment program on district attorney's approval]; Esteybar v. Municipal Court (1971) 5 Cal.3d 119, 124-127, 95 Cal.Rptr. 524, 485 P.2d 1140 (Esteybar) [Legislature cannot condition court's authority to reduce a felony offense to a misdemeanor on approval of district attorney].) In each of these cases, our Supreme Court characterized the legislation at issue as a prosecutorial "veto" that usurped the judiciary's ability to carry out its traditional sentencing function. We see no such constitutional problem here.
First, we do not see how the cases relied on by petitioner preclude the Legislature from allowing the prosecutor to make a decision about where to file charges before any charges are even brought. Simply because section 707, subdivision (d) affects sentencing does not mean that it violates the separation of powers doctrine. (Davis v. Municipal Court (1988) 46 Cal.3d 64, 86, 249 Cal.Rptr. 300, 757 P.2d 11 (Davis).)
More importantly, as pointed out by the dissent in Manduley, and the Supreme Court in Davis, supra, 46 Cal.3d at p. 82, 249 Cal.Rptr. 300, 757 P.2d 11: "[I]n all of those cases the challenged statutory provisions purported to give a prosecutor the right to veto a decision made by a court after criminal charges had already been filed." Thus, in those cases the prosecutor's decision making authority was allowed to "trump" that of the trial court after the trial court had assumed jurisdiction of the proceedings. For example, in Esteybar, the court rejected the idea that the prosecutor's charging discretion was violated by precluding the prosecutor from prohibiting a court from determining a case is a misdemeanor after it has been filed as a felony. The court stated: "This argument overlooks the fact that the magistrate's determination follows the district attorney's decision to prosecute. As stated in Tenorio, `When the decision to prosecute has been made, the process which leads to acquittal or sentencing is fundamentally judicial in nature.'" (Esteybar, supra, 5 Cal.3d at p. 127, 95 Cal.Rptr. 524, 485 P.2d 1140.) Likewise, in On Tai Ho, the court emphasized, "The principle summarized in the quoted language from Tenorio is that when the jurisdiction of a court has been properly invoked by the filing of a criminal charge, the disposition of that charge becomes a judicial responsibility." (People v. Superior Court (On Tai Ho) (1974) 11 Cal.3d 59, 66, 113 Cal.Rptr. *521 21, 520 P.2d 405 (On Tai Ho), some italics added.)
Finally, in Navarro, the court emphasized its dissatisfaction with prosecutorial concurrence regarding sentencing because it was "a power to be exercised after the sentencing court has judicially determined that the defendant, under the facts and the law, should be committed." (Navarro, supra, 7 Cal.3d at p. 259, 102 Cal.Rptr. 137, 497 P.2d 481.) As noted, the court emphasized the words "after" and "follows" in explaining its concern regarding the violation of separation of powers. Placing an emphasis on the timing of the discretion exercised makes sense in that it is difficult to conclude that the executive branch could infringe on the judicial branch by discretionary functions it performs before the court ever even has jurisdiction over the case. Here, the discretion allocated to the prosecutor is exercised before the court ever exercises jurisdiction over the case.[4]

Davis v. Municipal Court
This distinction was noted by the Supreme Court most recently in Davis, supra. The Davis court considered whether a local rule that precluded misdemeanor diversion programs for wobblers charged as felonies violated the separation of powers doctrine by authorizing the executive branch to infringe on the judicial branch's traditional sentencing authority. The Supreme Court rejected that argument and found that the local rule did not violate the separation of powers doctrine. The Court specifically recognized that prosecutorial discretion in charging a felony rather than a misdemeanor "will frequently have a variety of effects on the ultimate judicial disposition of the matter." (Davis, supra, 46 Cal.3d at p. 82, 249 Cal.Rptr. 300, 757 P.2d 11.) The court went on to evaluate the discretion exercised in Davis as compared to that at issue in Tenorio, Esteybar and On Tai Ho. The court noted that "Esteybar expressly emphasized the timing of the exercise of prosecutorial discretion as a crucial factor in the Tenorio analysis." (Davis, supra, 46 Cal.3d at p. 83, 249 Cal.Rptr. 300, 757 P.2d 11.) The Davis court concluded that the Tenorio line of cases all involved statutes that gave the prosecution a veto power over judicial sentencing decisions and that such an executive branch "review" of a judicial function was improper under the separation of powers doctrine. (Davis, supra, 46 Cal.3d at 84, 249 Cal.Rptr. 300, 757 P.2d 11.) An exercise of prosecutorial discretion prior to any judicial involvement that limited sentencing options was not such a veto, however.
The Davis court looked also to a court of appeal decision finding no violation of separation of powers where a district attorney was given unfettered discretion to decide whether to prosecute robbery cases involving less than $200 of property as a felony or a misdemeanor. The Davis court quoted *522 from the court of appeal decision, emphasizing, "It involves a purely prosecutorial function and does not condition judicial power in any way." (People v. Adams (1974) 43 Cal.App.3d 697, 707, 117 Cal. Rptr. 905.) The court went on, "Thus, Adams makes clear that the only exercise of prosecutorial discretion at issue in this casethe discretion to charge a wobbler as a felony rather than as a misdemeanordoes not usurp judicial power or unconstitutionally infringe the judicial function. As explained earlier, the fact that the prosecutor's charging decision may affect a trial court's power to order diversion does not alter that conclusion, any more than would the fact that a prosecutor's charging decision may have the effect of limiting a court's sentencing options." (Davis, supra, 46 Cal.3d at 86, 249 Cal. Rptr. 300, 757 P.2d 11, italics added.). Here, too, while the prosecutor's decision to file charges in adult court will affect sentencing, it simply does not undermine, usurp or condition any judicial authority once the court assumes jurisdiction of the case.
Petitioner here presumes that because filing in adult court affects sentencing, it necessarily is a "traditional" judicial function and therefore cannot be allocated to the executive branch. However, there is no "traditional" right to a fitness hearing at all, let alone one conducted by the judiciary. Rather, fitness hearings are only conducted by the court because the Legislature originally directed so. As the Davis court pointed out: "None of [the Tenorio line of] cases suggests that the exercise of prosecutorial discretion prior to the filing of such charges improperly subordinates the judicial branch to the executive in violation of the Constitution, even though the prosecutor's exercise of such charging discretion inevitably affects the sentencing or other dispositional options available to the court." (Davis, supra, 46 Cal.3d at p. 82, 249 Cal.Rptr. 300, 757 P.2d 11.) Thus, the discretion at issue is exercised at a stage in the prosecution that is outside the reach of judicial power under the Tenorio line of cases, and is not so necessarily engrossed in the traditional functions of the judiciary that allocating that power to the executive branch would undermine the ability of the judiciary to perform its duties.

Romero
Petitioner also relies on People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 515-516, 53 Cal.Rptr.2d 789, 917 P.2d 628, to conclude that the Legislature cannot grant discretionary authority to the trial court in some circumstances and to the prosecutor under other circumstances. But Romero does not stand for that proposition. Rather, in Romero the court simply reaffirmed that the Legislature may not condition judicial sentencing authority on the approval of the prosecutor. (Romero, supra, 13 Cal.4th at p. 516, 53 Cal.Rptr.2d 789, 917 P.2d 628.) As set forth above, section 707, subdivision (d) does not create such a situation. Additionally, the Romero court reaffirmed timing as a critical consideration in the separation of powers analysis: "When the jurisdiction of a court has been properly invoked by the filing of a criminal charge, the disposition of that charge becomes a judicial responsibility. (See also People v. Superior Court (On Tai Ho), supra, 11 Cal.3d at p. 66, 113 Cal.Rptr. 21, 520 P.2d 405; Esteybar v. Municipal Court, supra, 5 Cal.3d at p. 127, 95 Cal.Rptr. 524, 485 P.2d 1140.)" (People v. Superior Court (Romero), supra, 13 Cal.4th at p. 517, 53 Cal.Rptr.2d 789, 917 P.2d 628, italics added.) Additionally, the Romero court explicitly recognized that the Legislature can take away the judiciary's authority to make certain sentencing decisions, which is what happened here. *523 (Romero, supra, 13 Cal.4th at 516, 53 Cal.Rptr.2d 789, 917 P.2d 628 ["That the Legislature and the electorate may eliminate the courts' power to make certain sentencing choices may be conceded."].) In our view, section 707, subdivision (d) simply limits the judicial sentencing choices under certain defined circumstances. It is within the Legislature's prerogative to do so and does not violate the separation of powers doctrine.
In sum, not only do we believe that the power conferred by section 707, subdivision (d) is more akin to a charging decision than a sentencing decision, we submit that to the extent such power is not clearly categorized as judicial or prosecutorial in nature it is within the power of the legislative branch to select which branch should exercise that discretion and under what circumstances. In effect, petitioner asks us to grant him a constitutional right to receive what is actually a legislative grace. If it is correct that the Legislature (or, as here, the People by initiative) could eliminate the juvenile courts entirely, or lower the age of "juvenile" to 14, or mandate that certain offenses be charged in adult court, common sense compels the conclusion that giving the discretion to a prosecutor to charge certain legislatively dictated crimes under certain legislatively dictated circumstances in adult court should not be unconstitutional.
The purpose of separation of powers is to protect individual liberty by preventing concentration of powers in the hands of any one branch of government. (Buckley v. Valeo (1976) 424 U.S. 1, 122, 96 S.Ct. 612, 46 L.Ed.2d 659.) That purpose is in no way offended by section 707, subdivision (d).[5] There is a fundamental distinction between holding an opinion as to whether something is good policy and recognizing who has the power to establish that policy. While we might be of the opinion that the trial court would be better suited to determine a juvenile's fitness for adjudication in adult court, we cannot replace our opinion for that of the electorate which, in this case, establishes policy.

Proposition 21 Does Not Violate the Single Subject Rule
Petitioners additionally contend that Proposition 21 violates Article II, section 8(d) of the California Constitution which provides that initiative measures may not embrace more than "one subject." Petitioners contend Proposition 21's subjects are not "reasonably germane" to one another and thus constitutionally infirm. The People counter that prior case law makes clear that Proposition 21, while comprehensive and thorough, does consist of provisions reasonably germane to one another and to the proposition's stated purpose of diminishing juvenile and gangrelated crime. Further, the People emphasize the strong policy preference of upholding the will of the voters in the initiative process. Though we recognize the broad scope of Proposition 21's provisions, we conclude that California case law makes clear the proposition does not violate the single-subject rule.
A measure comports with the single subject rule if "`despite its varied collateral effects, all of its parts are "reasonably germane" to each other,'" and related to the general purpose of the initiative. (Brosnahan v. Brown (1982) 32 Cal.3d 236, 245, 186 Cal.Rptr. 30, 651 P.2d 274, (Brosnahan) citing Amador *524 Valley Joint Union High Sch. Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208, 219, 149 Cal.Rptr. 239, 583 P.2d 1281 (Amador Valley).) "[T]he courts have recognized that the purpose of the `single subject' rule is to minimize voter confusion and `logrolling'[6] [Amado Valley, supra, at pp. 231-232, 149 Cal. Rptr. 239, 583 P.2d 1281], and if the court determines the provisions are functionally related and reasonably germane to a common underlying purpose, the `single subject' rule is satisfied and there is no separate basis for invalidating the initiative merely because of alleged `logrolling' (see Kennedy Wholesale, Inc. v. State Bd. of Equalization (1991) 53 Cal.3d 245, 255, 279 Cal.Rptr. 325, 806 P.2d 1360) or alleged voter confusion (see Insurance Industry Initiative Campaign Com. v. Eu [(1988) 203 Cal.App.3d 961] at p. 968, 250 Cal.Rptr. 320.)" (California Gillnetters Assn. v. Department of Fish & Game (1995) 39 Cal.App.4th 1145, 1162, fn. 11, 46 Cal.Rptr.2d 338.)
In Brosnahan, the California Supreme Court held that Proposition 8, the "Victims' Bill of Rights," withstood a challenge under the single-subject rule even though the initiative had provisions relating to victim restitution, school safety, bail, sentence enhancements, the use of prior convictions to impeach, the defense of diminished capacity, and evidentiary rule changes. (Brosnahan, supra, 32 Cal.3d at p. 246, 186 Cal.Rptr. 30, 651 P.2d 274.) Other cases similarly recognize the broad scope of the single-subject rule. (See Raven v. Deukmejian (1990) 52 Cal.3d 336, 347, 276 Cal.Rptr. 326, 801 P.2d 1077 [upholding the "Crime Victims Justice Reform Act" and concluding that its various provisions formed "a comprehensive criminal justice reform package"]; Amador Valley, supra, 22 Cal.3d at 231, 149 Cal.Rptr. 239, 583 P.2d 1281 [upholding tax initiative on the ground that its varied provisions were "reasonably ... germane to the general subject of property tax relief"]; Fair Political Practices Comm. v. Superior Court (1979) 25 Cal.3d 33, 37, 157 Cal.Rptr. 855, 599 P.2d 46 [upholding single-subject challenge to Political Reform Act of 1974 despite its multiple complex features].)
Here, petitioners have pointed to no portion of Proposition 21 that cannot be said to be "reasonably germane" to promoting the goal of reducing juvenile and gang-related crime. That the provisions alter various portions of different statutes and are comprehensive in scope does not render them constitutionally infirm. As stated by the trial court on this issue,
"If this were a plain language or an analysis of the statute type matter, I think the defendants might prevail based on the numerous and somewhat attenuating interrelated provisions of the initiative, [¶] But in following the Brosnahan analysis, the court's going to find the main purpose of the statute was dealing with thean increase in serious and violent juvenile criminal conduct and that a comprehensive approach involved the recognition of the relationship between violent serious juvenile crimes, street crimes, and those crimes and offenses punished under the three strikes legislation."
The trial court went on to aptly quote from Brosnahan that "`In our Democratic society in the absence of any compelling, overriding constitutional imperative, we showwe should not prohibit the sovereign people from either expressing or implementing their own will on matters of such direct and immediate consequence to *525 them as their perceived safety....."' (Reading from Brosnahan, supra, 32 Cal.3d at p. 248, 186 Cal.Rptr. 30, 651 P.2d 274.) Under Brosnahan and the other cases cited herein, that, in petitioners' words, the proposition "shifts gears at least three times," does not mandate constitutional invalidity. As noted by the People, "the provisions of Proposition 21 may be comprehensive and thorough, [but] they are neither diffuse or unrelated. They constitute a focused response to juvenile and gang-related crime. This is a proper use of the initiative process."
A review of the various sections of Proposition 21 illustrates this point. Sections 3-10 and section 13 amend laws enacted to address the problem of violent street gangs. Section 11 adds gang-related murder as a special circumstance. Section 12 addresses graffiti, a crime commonly known to be related to both gangs and juveniles. Sections 18 through 34 amend various portions of the Welfare and Institutions Code to address juvenile crime, and indisputably all sections in this portion relate to altering the juvenile justice system and laws regarding juvenile gang-related crimes. All of these portions are on their face reasonably germane to the goal of preventing juvenile and gang-related crime.
Petitioners present the strongest argument as to sections 14 through 17, which amend portions of the three strikes law to add certain violent and serious felonies and to amend the Welfare and Institutions Code to reflect these changes. However, we do not view the three strikes revisions included in the statute as a "tuck in" added to trick the voters or unrelated to the goals of the initiative.[7] (See California Trial Lawyers Assn. v. Eu (1988) 200 Cal. App.3d 351, 360, 245 Cal.Rptr. 916.) Nor does petitioner's claim of confusion over the "official" title of the initiative ("Juvenile Crime" as opposed to the short title set forth in the text of "Gang Violence and Juvenile Crime Prevention Act of 1998") alter our conclusion that the voters read and understood the text of the initiative placed before them on the ballot. Rather, as stated by the trial court, under Brosnahan Proposition 21 can be viewed as a "comprehensive approach involv[ing] .. . the relationship between violent serious juvenile crimes, street crimes, and those crimes and offenses punished under the three strikes legislation." And, as stated by our Supreme Court:
"... [W]e have upheld a variety of initiative measures in the face of a single-subject challenge, emphasizing that the initiative process occupies an important and favored status in the California constitutional scheme and the single-subject requirement should not be interpreted in an unduly narrow or restrictive fashion that would preclude the use of the initiative process to accomplish comprehensive, broad-based reform in a particular area of public concern." (Senate of the State of Cal. v. Jones (1999) 21 Cal.4th 1142, 1157, 90 Cal. Rptr.2d 810, 988 P.2d 1089.)
Finally, and most importantly, we must not forget that the initiative process is a power reserved by the people, not one granted to them. (Associated Home Builders, etc., Inc. v. City of Livermore (1976) 18 Cal.3d 582, 591, 135 Cal.Rptr. 41, 557 P.2d 473.) Thus, it is:
"`... "the duty of courts to jealously guard this right of the people" [citation] (3)27, "one of the most precious rights of our democratic process." [Citation.]

*526 "[I]t has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it." [Citations.]'" (National Paint & Coatings Assn. v. State of California (1997) 58 Cal.App.4th 753, 760, 68 Cal.Rptr.2d 360.)
The trial court was correct in its holding. For the reasons set forth above, we too conclude Proposition 21 does not violate the single-subject rule.

Proposition 21's Text Was Not Unconstitutionally Altered
Petitioners also claim that Proposition 21 is unconstitutional because "the version of Proposition 21 that was circulated to voters for signature differs from the version of Proposition 21 that appeared on the ballot." Petitioners provide no authority for this position other than citing generally to the Elections Code. The Elections Code, however, requires only that the "proposed initiative measure" be submitted to the Attorney General and that the "text of the measure" be attached to the petition. (Elec.Code, §§ 9008, 9014.) As the People point out in their return, the variation in the text was due to Legislative revisions to statutes impacted by Proposition 21 between the time of circulation and the election date. Petitioners have provided no authority for the alleged constitutional defect in the alterations to the text of the initiative and we see no such mandate in the Elections Code. We therefore reject the claim.

Proposition 21 Does Not Violate Equal Protection
Finally, petitioners contend that section 707, subdivision (d) violates equal protection of the laws because they claim it treats similarly situated juvenile offenders differently in that it creates two classes of individualsthose whom the prosecutor chooses to prosecute in adult court and those the prosecutor chooses to prosecute in juvenile courtwithout any reasonable basis for distinguishing between the two groups. We summarily reject this claim because the statute does not treat similarly situated juveniles differently. Rather, under section 707, subdivision (d) all juveniles are subject to the prosecutor's discretion. Disparity in charging criteria by a prosecutor does not violate equal protection absent some proof that the decisions are based on some impermissible factor such as race. (People v. Kirkpatrick (1994) 7 Cal.4th 988, 1024, 30 Cal.Rptr.2d 818, 874 P.2d 248; People v. Andrews (1998) 65 Cal.App.4th 1098, 1102-1104, 76 Cal.Rptr.2d 823; People v. Cortez (1992) 6 Cal.App.4th 1202, 1212, 8 Cal.Rptr.2d 580.) Petitioners argue prosecutors cannot have "unfettered" discretion of who to prosecute, but the authority relied on by petitioner simply serves to again make the point that the discretion cannot be used to exercise unjustifiable standards such as those based on race, religion or other arbitrary classifications. (Wayte v. United States (1985) 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547.) And while petitioners contend generally that the discretionary element of section 707, subdivision (d) "opens the door to abuse" and could conceivably allow prosecutors to protect those juveniles to whom they feel "cultural loyalty," the potential for abuse under section 707, subdivision (d) is no greater than that possible for other charging decisions.
Further, petitioners complain that section 707, subdivision (d) provides juveniles with no review process to ensure "evenhanded decision making." However, section 707, subdivision (d)(4) does require automatic judicial review to determine reasonable *527 cause exists for direct filing in adult court. Thus, petitioners claim that there is no "judicial oversight" of the charging decision is overstated. While it is true there is no judicial "second-guessing" of the discretionary choice of whether or not to file charges against one juvenile as opposed to another in adult court, as we explained, disparity in the exercise of prosecutorial discretion does not violate equal protection. Thus, we conclude section 707, subdivision (d) does not violate equal protection principles.

DISPOSITION
The petitions for writ of prohibition are denied.
WE CONCUR: DIBIASO, and VARTABEDIAN, JJ.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.
[2] Because voter enacted initiatives are considered a power exercised by the legislative branch, we will refer as appropriate to the Legislature or the people when discussing the legislative branch. (See Bagley v. City of Manhattan Beach (1976) 18 Cal.3d 22, 26, 132 Cal.Rptr. 668, 553 P.2d 1140.)
[3] Section 707, subdivision (d) refers to certain offenses that qualify a juvenile for adult court disposition at the prosecutor's discretion, including murder as charged here. (§ 707, subd. (b).)
[4] We reject petitioner's reliance on Edsel P v. Superior Court (1985) 165 Cal.App.3d 763, 211 Cal.Rptr. 869 as similarly misplaced. Edsel P. examined the practice of allowing a district attorney to prevent a trial court from inquiring into the sufficiency of the evidence to establish a presumption of unfitness for juvenile court disposition. (Edsel P., supra, 165 Cal.App.3d at 786, 211 Cal.Rptr. 869.) There the court expressed concern about a possible violation of separation of powers because the Legislature had provided for "judicial rather than prosecutorial processes for detaining a minor and determining fitness...." (Id. at p. 785, 211 Cal.Rptr. 869, fn. omitted.) Moreover, the court's separation of powers concerns stemmed from the statutory interpretation being advanced by the People which would have allowed the prosecutor to prevent a court from conducting any inquiry into the sufficiency of the evidence before applying a presumption of unfitness. Such an interference is not present under section 707, subdivision (d) precisely because the determination of fitness is, by statute, no longer in the hands of the judiciary under certain circumstances and the discretion is exercised independent of any trial court involvement.
[5] This conclusion is consistent with out of state authority addressing similar legislation. (See Hansen v. State (Wyo.1995) 904 P.2d 811; Bishop v. State (1995) 265 Ga. 821, 462 S.E.2d 716; People v. Thorpe (Colo.1982) 641 P.2d 935; State v. Cain (Fla.1980) 381 So.2d 1361.)
[6] Logrolling is the practice of adding several separate subjects to one initiative that might not gain voter approval individually. (Amador Valley, supra, 22 Cal.3d at p. 231, 149 Cal.Rptr. 239, 583 P.2d 1281.)
[7] We are likewise not convinced that the single-subject rule is offended by the fact that the initiative altered both juvenile and adult criminal laws in one initiative. The "reasonably germane" standard does not mandate such a result.